THE UNION BREWING COMPANY *et al. vs.* THE INTER-STATE BANK AND TRUST COMPANY *et al.* Defendants in Error.—(PEOPLE's SAVINGS BANK, Plaintiff in Error.)

*Opinion filed June 16, 1909.*

1. BAILMENTS—*terms of pledge agreement may extend to other and future liabilities.* The terms of an agreement pledging a note as collateral security may be such as to include not only the particular liability specified in the agreement but also other liabilities then in existence and future advances by the pledgee, and in any case the agreement is to be taken in the sense in which it was, in fact, understood by the parties.

2. SAME—*a person contracting by his adopted trade name is bound.* One who enters into a negotiable or other contract by a trade name adopted and used by him in his business is bound as effectually as though the contract had been entered into and executed under his own proper name and signature.

3. SAME—*when a pledge agreement covers existing and future personal indebtedness.* Where a person doing business as an unincorporated savings bank borrows money from a trust company which knows of his sole ownership of the business, and executes a note in the name of such bank, by himself as president, containing an agreement that a certain note payable to the bank shall be held as security for "the payment of this or any other liability or liabilities of ours  * * *  due or to become due or that may be hereafter contracted," the pledge agreement, as between the parties, covers personal obligations of such person to the trust company in addition to the particular note for which the collateral was pledged.

4. SAME—*what does not exclude personal obligations of pledgor from the terms of pledge agreement.* The fact that an agreement

pledging a note payable to an unincorporated savings bank to se-
cure a note executed by such bank by its president and sole owner,
uses the words "ours" and "them" in referring to the liabilities se-
cured to the bank and its president, does not, as between the parties,
exclude from the scope of the agreement personal obligations
of the president to the trust company, which knew of his sole own-
ership of the business.

5. SAME—*when a new partner acquires no interest as against
pledgee.* Where a note payable to an unincorporated savings bank
is pledged as collateral at the time of the purchase of a half in-
terest in the business, the purchasing partner only acquires an in-
terest in such note subject to the rights and equities of the pledgee,
notwithstanding the note, which had become due before the part-
nership interest was purchased, was thereafter renewed by giving
a new note as of the date of the maturity of the old one, which
was surrendered to the maker.

6. BILLS AND NOTES—*title will pass, in equity, without endorse-
ment.* Where the transfer of a note is for valuable consideration
and the endorsement of the note is omitted through mistake or
fraud, a good title will pass, in equity, by mere delivery.

WRIT OF ERROR to the Appellate Court for the Second
District;—heard in that court on appeal from the Circuit
Court of Peoria county; the Hon. N. E. WORTHINGTON,
Judge, presiding.

December 10, 1906, the Union Brewing Company and
S. & A. Woolner filed a bill of interpleader against the
Inter-State Bank and Trust Company (hereafter called the
trust company) and John G. Allen, as trustee in bankruptcy
of E. Lewis Kelley, individually and as surviving partner
of George H. Simmons, late partners under the name of
People's Savings Bank, and Arthur Tapping, as adminis-
trator of the estate of George H. Simmons, deceased, re-
questing that the court determine to whom should be paid
the amount due on a certain note signed by the Union
Brewing Company (guaranteed by S. & A. Woolner) and
in favor of the People's Savings Bank. Each of the parties
named in the bill claimed the whole or some part of the
amount due on said note.

The People's Savings Bank, which had never been incorporated, was owned by Jacob Woolner up to about September 9, 1905, when he sold it to George H. Simmons, who then became the sole owner. Simmons, during the year 1905, was also president of the trust company. September 15, 1905, Simmons borrowed $5000 from the trust company and executed and delivered his promissory note therefor, due ninety days after date, with interest at seven per cent, the rest of which note reads as follows:

"Having deposited with said bank as collateral security, for payment of this or any other liability or liabilities of ours to said bank, due or to become due, or that may be hereafter contracted, the following property, viz., note the Union Brewing Company, endorsed by S. and A. Woolner and dated September 9, 1905, for $9472.32, payable three months after date, with six per cent interest from date, to the People's Savings Bank, and endorsed by them, the market value of which is now $9472.32, with the right to call for additional security should the same decline, and on failure to respond this obligation shall be deemed to be due and payable on demand, with full power and authority to sell and assign and deliver the whole of said property, or any part thereof or any substitutes therefor or any additions thereto, at public or private sale, at the option of said bank or its assigns, and with the right to be purchasers themselves at such public or private sale, on the non-performance of this promise or non-payment of any of the liabilities above mentioned, or at any time or times thereafter, without advertisement or notice, and after deducting all legal or other costs and expenses for collection, sale and delivery, to apply the residue of the proceeds of such sale or sales so to be made, to pay any, either or all of said liabilities, as said bank or its president or cashier shall deem proper, returning the overplus to the undersigned.

PEOPLE'S SAVINGS BANK,
Geo. H. Simmons, *Pres.*"

At the same time Simmons delivered to the trust company the note pledged in the instrument just recited, which was dated September 9, 1905, for $9472.32, with interest at six per cent, and containing a provision that it might be renewed for three months at maturity, signed by the Union Brewing Company, payable to the order of the People's Savings Bank, and endorsed by S. & A. Woolner and

by "People's Savings Bank, Geo. H. Simmons, Pres." At that time Simmons was indebted to the trust company upon a note for $4000, with interest at the rate of six per cent, dated July 26, 1905, due one year after date, and endorsed by George H. Simmons, V. A. Goebbels, D. S. Long, H. W. Danforth and Marcus Whiting. December 1, 1905, Simmons became indebted to the trust company upon three other notes of that date, each due six months after date,— one for $1000, with interest at five per cent, signed by G. H. Simmons and George B. Powell; another for $2500, with interest at five per cent, signed by G. H. Simmons and A. H. Thompson; and the third for $500, with interest at five per cent, signed by G. H. Simmons and P. L. Mounce. December 14, 1905, Simmons renewed his note of September 15, 1905, for $5000 to the trust company by giving another instrument of the same date and tenor as the one above set out, except that its maturity was eighty days after date, and the same pledge was contained in the renewal note as in the first note and it was signed in the same manner.

December 19, 1905, Simmons entered into a partnership agreement with E. Lewis Kelley "to own the banking business and the building of the People's Savings Bank," and by that agreement Simmons agreed to transfer to Kelley a one-half interest in the building and the banking business of the People's Savings Bank. The note of the Union Brewing Company for $9472.32, dated September 9, 1905, and due in three months, which had been assigned to the trust company as collateral security and which had been specifically described in each of the written pledges, was past due when this instrument of December 14, containing the second pledge, was executed. It had not been renewed on account of the absence of one of the Woolners from Peoria. On December 29, 1905, the renewal of that note dated December 9, 1905, payable one year after date to the order of the People's Savings Bank, for $9472.32, with in-

terest at six per cent, signed by the Union Brewing Company and guaranteed by S. & A. Woolner, was delivered to the trust company in lieu of and in substitution for the original note, said original note being surrendered to said brewing company.

George H. Simmons died February 6, 1906, and Arthur Tapping was appointed his administrator. February 9, 1906, a petition in bankruptcy was filed against E. Lewis Kelley, individually and as surviving partner of George H. Simmons, and on February 25, 1906, said Kelley, individually and as surviving partner, was adjudged bankrupt, and on April 2, 1906, John G. Allen was appointed trustee in bankruptcy of said estate.

After the pleadings were settled the cause was referred to a master, who took and reported the proofs, with his conclusions. The master found that the Inter-State Trust Company was entitled to be paid out of said fund one certain note of $5000, with interest, and that the rest of the fund was owing to the trustee in bankruptcy. After objections and exceptions a decree was entered by the trial court pursuant to the master's report. From that decree an appeal was taken by the trust company to the Appellate Court, where the decree was reversed and the cause remanded, directing the payment of all the notes held by it against the People's Savings Bank out of the fund in court. From that judgment a writ of error is now prosecuted to this court.

MAPLE & LOVETT, and STEVENS & HORTON, for plaintiff in error:

Where property is pledged as security for a specific debt it cannot be appropriated by the pledgee to other debts, and the pledgee has no right to hold the property for any other debt than that for which it was pledged, and the proceeds of the property cannot be applied to any debt other than that which was contemplated in the contract of pledge.

22 Am. & Eng. Ency. of Law, (2d ed.) 869; *Baldwin* v. *Bradley,* 69 Ill. 32.

Courts will seek to discover and give effect to the intention of the parties to a written contract, so that performance may be enforced according to the sense in which they mutually understood the contract when it was made. *Whalen* v. *Stephens,* 193 Ill. 121.

The words, "having deposited with said bank, as collateral security, for the payment of this note, and also as collateral security for all other present and future demands, of any and all kinds, of the said bank against the undersigned, due or not due," are no part of a promissory note. They are merely a statement that the makers of that note have deposited the pledge described, as collateral security. A note signed by two parties, containing such a clause, can not be held for a demand against one, only, of the signers, who jointly, and in no other way, answer to the description of "the undersigned," as those words are there used. *Bank* v. *Southworth,* 215 Ill. 640.

Where there is an express contract, the terms thereof control, since both the bailor and the bailee are entitled to impose on one another any terms they, respectively, may choose. A special contract prevails against general principles of law applicable, in the absence of express agreement. 5 Cyc. 174, 175.

Delivery of a negotiable instrument, to be held as collateral security, is an essential condition of the validity of the act of pledge. In this respect there is no difference between a pledge of personal property and one of negotiable securities. Colebrooke on Collateral Securities, 17.

A simple delivery of negotiable promissory notes or bills of exchange as collateral security, where endorsement is required, so that the title to the securities still remains in the pledgor, vests in the pledgee a contingent equitable interest only, or in the proceeds thereof, subject to the equities of third persons, as against the pledgor. The pledgee.

under such circumstances, is the mere agent of the pledgor, and no reason exists for excluding equities existing against the pledgor. Colebrooke on Collateral Securities, 13.

A partner cannot pledge a distinct parcel of the firm property for his individual debt. Colebrooke on Collateral Securities, 98.

JACK, IRWIN, JACK & MILES, for defendants in error:

A man, either in his general dealings or in a particular transaction, may adopt whatever name he chooses, and he will be bound accordingly. 1 Parsons on Notes and Bills, 81.

Where a single individual does business under a firm name he should sue and be sued in his own proper Christian name and surname, but it should be alleged and proved that he, alone, is interested in the business. 15 Ency. of Pl. & Pr. 929.

Where the pledgor, after adjusting collateral security for a specific debt less in amount than the value of such collateral paper, agrees that the surplus, if any, arising from the sale or collection thereof shall be a pledge for other debts, such contract is enforced. In the application of the proceeds of such collaterals the money is applied first to the debts of the oldest standing. Colebrooke on Collateral Securities, 184.

Mr. JUSTICE CARTER delivered the opinion of the court:

The trust company contends that the language of the agreement made a part of the $5000 note, pledging said Union Brewing Company note as collateral, indicates that it was held not only as security for the $5000 note, but also for the other four notes held by said trust company and signed by said Simmons, as heretofore set out in the statement, while counsel for plaintiff in error insist that said collateral could only be used to pay the $5000 note, and

contend that the balance left from said $9472.32 note of the Union Brewing Company must be paid over to the trustee in bankruptcy of Kelley, individually and as surviving partner of Simmons. The intention of the parties, as shown by this agreement, must control. The terms of the contract under which the property is pledged may be such as to authorize it to be held for the satisfaction of other debts in existence at the time of the execution of the contract and also for future advances which may be made by the pledgor. (22 Am. & Eng. Ency. of Law,—2d ed.— p. 871; Colebrooke on Collateral Securities,—2d ed.— sec. 97.) "The rule in all these cases strictly applies, that the particular contract is to govern the rights of the parties." (Story on Bailments, sec. 304; *Baldwin* v. *Bradley,* 69 Ill. 32.) The contract is to be taken in the sense in which it was, in fact, understood by the parties. *Street* v. *Chicago Wharfing and Storage Co.* 157 Ill. 605; *Whalen* v. *Stephens,* 193 id. 121.

All of the indebtedness herein mentioned as owing to the trust company by the People's Savings Bank and George H. Simmons was created before the partnership agreement between Simmons and Kelley was entered into. The evidence shows that the officials of the trust company understood that Simmons was the only person interested in the People's Savings Bank at the time the $5000 note was given, in September, 1905, and when it was renewed, in December, 1905. The record, it is true, shows that the trust company kept a separate account with the People's Savings Bank and with George H. Simmons, but the fact that George H. Simmons was the sole owner of the People's Savings Bank was evidently known to all the parties. A person may adopt and use, as indicative of his negotiable and other contracts, a business name or style entirely different from his own proper name, and when he, by himself or a general agent, enters into a negotiable or other contract under such adopted business name, he will be bound

by such contract as effectually as though it had been entered into and executed under his own proper name and signature. "In such case the adopted name is equivalent, in law, to the actual name of the party." (1 Daniel on Negotiable Instruments,—4th ed.—p. 307; 1 Randolph on Commercial Paper, sec. 141.) As between Simmons and the trust company the pledge of the $9472.32 note for "any other liability or liabilities of ours in said bank, due or to become due, or that may be hereafter contracted," was binding as to Simmons' other indebtedness. (*Buchanan* v. *International Bank,* 78 Ill. 500; *Walker* v. *Abt,* 83 id. 226; *Bartelott* v. *International Bank,* 119 id. 259.) The mere fact that the pledge used the words "ours" and "them," as applied to the People's Savings Bank and George H. Simmons, does not, we think, change the situation as between Simmons and the trust company.

Had any person dealt with the People's Savings Bank between September 9 and December 15, 1905, believing it to be a corporation and been thereby deceived to his injury, a different question would be presented, and it might well be urged then that Simmons, as to such person or persons, would be estopped to deny the corporate character of the business. But there is no evidence in the record indicating any such state of facts. Kelley, when he went into the partnership on December 19, 1905, obtained his interest in the business subject to all the equities of the trust company then existing, and his trustee in bankruptcy took his title subject to all the liens, equities and burdens to which it was subject in Kelley. (*Union Trust Co.* v. *Trumbull,* 137 Ill. 146; *Davis, Cory & Co.* v. *Chicago Dock Co.* 129 id. 180; *Hooven Co.* v. *Burdette,* 153 id. 672.) Furthermore, at the time of taking the evidence in this case, Allen, the trustee of Kelley, testified that as trustee he "had made a final settlement with the depositors and other creditors" of said Kelley, individually and as surviving partner of the firm of Simmons & Kelley.

The fact that the note of the Union Brewing Company which was pledged and deposited as collateral was renewed after Kelley entered into the partnership with Simmons does not in any way affect the rights or interests of the parties herein. The renewal was the substitution of a new note for the old note, and did not create a new debt in which Kelley had any interest as against the claims for which it was pledged. The trust company was "equally entitled to the benefit of the collateral security, as a means of obtaining payment of the note given in renewal, as in the case of the original evidence of indebtedness." (Cole-brooke on Collateral Securities,—2d ed.—sec. 14, p. 24; *Fairbank* v. *Merchants' Nat. Bank,* 132 Ill. 120; 7 Cyc. 877; *Selma Bridge Co.* v. *Harris,* 132 Ala. 179; Jones on Pledges, sec. 358.) As we have said, Kelley only acquired an interest in the collateral note subject to the rights under the pledge agreement.

It is also urged that the collateral note given in lieu of the original note was not endorsed. "The absence of endorsement is a merely technical objection, for the actual transfer for value passes the property in the paper substantially, and the endorsement is needed only to make that transfer formal." (1 Parsons on Notes and Bills, p. 279.) When the transfer of the note is for a valuable consideration and the endorsement is omitted through mistake or fraud, a good title will pass, in equity, by mere delivery. (*Hughes* v. *Nelson,* 29 N. J. Eq. 547.) We do not think the failure to endorse this note affected in any way the equities in this case.

The trust company was entitled to a decree for the payment of all its notes against Simmons out of the fund in court. As those debts exceed the amount of the fund pledged there would be no balance for the trustee in bankruptcy.

The judgment of the Appellate Court must therefore be affirmed.

*Judgment affirmed.*