# James H. Knight, Administrator, Defendant in Error, v. Edgar F. Seney and Rowland T. Rogers, trading as Seney, Rogers & Company, Plaintiffs in Error.

## Gen. No. 23,433.

1. PLEDGES, § 44*—*when action for conversion lies against pledgor.* When pledged property is delivered to the pledgor for a special or limited purpose to be returned later, or the proceeds thereof, to the pledgee, the latter will not lose his lien, and if the pledgor fails, neglects or refuses to return the property or the proceeds, an action will lie against him for conversion.

2. PLEDGES, § 44*—*when shown that securities or proceeds were*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Knight v. Seney et al., 211 Ill. App. 324.

to be returned in specified time. In an action in trover against a pledgor for conversion of securities, evidence held sufficient to sustain a finding that such securities or the proceeds thereof were to be returned in a specified time.

3. APPEAL AND ERROR, § 438*—when question of variance may not be availed of. Where appellant's brief contains no argument that a variance between the pleadings and proof which could have been obviated then was pointed out on the trial, the variance cannot be availed of on appeal.

4. MUNICIPAL COURT OF CHICAGO, § 13a*—what does not constitute variance in action for conversion of securities. In an action in trover for the conversion of securities, an averment in the statement of claim that plaintiff did not authorize the sale of the securities is not materially variant from his testimony that he did authorize a sale of securities to be made at a specified place under the circumstances mentioned.

5. PLEDGES, § 46*—what should be verdict in action for conversion of pledged securities. Where trover is brought to recover for the conversion of securities which are collateral to a loan, the verdict should be the value of the securities at the time of the conversion with interest thereon, provided the indebtedness for which the collateral is held equals or exceeds such value, but if the amount of the indebtedness is less than the value of the securities converted, then no recovery can be had in excess of the indebtedness, although the securities were worth more.

6. USURY, § 5*—what constitutes. A contract for the investment of money and for the payment of 10 per cent. interest in consideration thereof, held to be a contract for a loan and usurious and that no interest was recoverable thereon.

7. USURY, § 32*—when may be set up to defeat collection of balance. It is not the law that no credit can be given for the payment of usury where it is voluntarily made, but the true rule is that as long as any portion of the debt remains unpaid, usury may be set up by the debtor by way of defeating the collection of this balance.

8. USURY, § 5*—what may not be set up as. Commissions paid a son of one party to a contract by the other party on the business of such parent cannot be set up as usury in an action under the contract.

9. PLEDGES, § 44*—when shown that collateral was applicable to all transactions between parties. In an action of trover for the conversion of securities, evidence held sufficient to support a finding that certain collateral was applicable to all of the transactions between the parties.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

10. PLEDGES, § 8*—*how determined what debts are secured by collateral.* In determining what debts are secured by collateral, the whole transaction between the parties is to be looked to, their intention controlling.

11. APPEAL AND ERROR, § 1658*—*when error in entering judgment for too large a sum cured.* Error in entering a judgment for too large a sum may be cured on appeal, where the amount properly due is not disputed and is ascertainable, and judgment for the proper amount affirmed.

TAYLOR, P. J., dissenting.

Error to the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1917. Modified and affirmed. Opinion filed May 15, 1918.

ADAMS, CREWS, BOBB & WESCOTT, for plaintiffs in error.

WINSTON, PAYNE, STRAWN & SHAW, for defendant in error.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

James H. Knight, as administrator of the estate of Adele Knight, deceased, brought an action in trover against Edgar F. Seney and Rowland T. Rogers, doing business as Seney, Rogers & Company. The case was tried before the court and jury, and there was a verdict in favor of plaintiff for $58,800. The defendants made a motion for a new trial, which was not disposed of for some time. The court overruled the motion and entered judgment for $62,319.76, being the amount of the verdict with interest thereon to the date of the judgment, and defendants prosecute this writ of error.

The record discloses that on August 10, 1911, Adele Knight, deceased, entered into a written contract with the defendants, which recited that the defendants were

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

engaged in the banking and brokerage business, and in the business of loaning moneys, buying and selling mortgages, and other securities, upon commissions and otherwise; and provided that Mrs. Knight would for a period of 5 years, unless the agreement was sooner terminated, invest $30,000 in the purchase of mortgages, trust deeds or bonds, the price not to exceed the par value thereof, and the same to be approved by her representatives; that the defendants in each case were to deliver to her the original notes or bonds, together with a title guarantee policy, or a merchantable abstract of title, policy of fire insurance and other information; that defendants might substitute other mortgages or bonds in lieu of those delivered, provided the same were satisfactory to Mrs. Knight; that the defendants might in such case resell the securities, and upon each resale Mrs. Knight was to deliver up the securities, together with other papers pertaining thereto. There was a further provision that the defendants should pay to Mrs. Knight the sum of $3,000 per year in quarterly instalments, in advance, and in consideration of such payment Mrs. Knight agreed to turn over and deliver to the defendants all interest notes or coupons of the securities in her possession, or the money in case she had collected any, and this was to be a complete payment and satisfaction of Mrs. Knight's part in the profits arising from the investment and services rendered in examining the securities. There was a further provision that upon the termination of the agreement by lapse of time, or otherwise, the defendants should pay to Mrs. Knight the $30,000 invested by her, together with any quarterly instalments or portion thereof that might then be due, and upon such payment Mrs. Knight should turn over and deliver to the defendants all securities held by her, and upon the termination of the contract, in case the defendants failed, neglected or refused to return or repay the $30,000, together with the quarterly instalments then due, Mrs. Knight, upon giving 10 days'

notice, might sell the securities she held at public auction to the highest and best bidder for cash, and might become the purchaser at such sale and apply the amount towards the repayment of the purchase price, after deducting reasonable costs and expenses, including reasonable attorney's fees, and in case the proceeds from such sale were insufficient to pay the expenses and the $30,000 or any portion that might remain due, the defendants agreed to pay such deficiency at once. If there was a surplus it should be paid to the defendants. The contract by its terms might be terminated by Mrs. Knight upon giving the defendants 6 months' notice in writing, and was made binding upon the executors and administrators of both parties. On December 9, 1911, the same parties entered into five similar contracts aggregating $40,000, and as in the first contract the annual payment to be made Mrs. Knight was 10 per cent. of the amount.

In accordance with the terms of the several contracts bonds and other securities were delivered to Mrs. Knight. On January 22, 1912, Mrs. Knight died intestate and her son, James H. Knight, was appointed administrator of her estate. On March 1, 1912, he gave his check as administrator to the defendants for $15,000, and on May 15th following a similar check for $5,000. July 9, 1912, plaintiff turned over to defendants at their request securities aggregating $10,000 and took their receipt therefor, which is as follows:

"RECEIVED IN TRUST FROM JAS. H. KNIGHT, BAILOR,
Victoria Bonds                     · $2600.00
Peoples Hospital Bonds               $7400.00
and hereby undertake to hold said property of the said Jas. H. Knight and subject to his order, for the purpose of being sold or otherwise dealt with, as the said bailor may direct; and when sold to pay net proceeds to the said bailor. We hereby acknowledge ourselves to be the bailees of said property for said bailor. If for any reason whatever a sale of said property is

not completed before 3 days, we agree to return same
to said bailor.

                    SENEY, ROGERS & CO.
                        By R. T. Rogers.''

Three days later, July 12th, under similar circum-
stances, plaintiff turned over to defendants securities
aggregating $30,000 and on February 7, 1913, under
like circumstances, other securities aggregating $10,000,
all of which had been held by Mrs. Knight under her
contracts with the defendants, and on each occasion the
defendants gave plaintiff a similar receipt. Some time
after the period mentioned in the three receipts had
elapsed, plaintiff demanded the return of the securities
or the proceeds thereof, and the defendants having
failed to return either, this suit was brought.

Plaintiff testified that at and before the several
times he delivered to defendants the securities covered
by the three receipts, defendants stated that they
were negotiating a deal involving more than $300,000
in Toledo, Ohio, and that to enable the defendants to
consummate the matter, it was necessary for them to
produce collateral, and for this purpose they requested
plaintiff to deliver to them the securities mentioned;
that on numerous occasions plaintiff demanded the re-
turn of the securities or the proceeds, and that the de-
fendants on several of these occasions told him that the
deal was still pending, and on others that the securities
had been sold and a check had been received for them
and that plaintiff would be paid as soon as the check
had passed through the bank.

The defendants offered evidence tending to show
that plaintiff was told that the securities mentioned in
the receipts of July 9th, and 12th were to be used
in the completion of the Victoria Theater building which
the defendants were financing and that the securities
were sold and the money used for this purpose, and
that the securities mentioned in the receipt of Febru-
ary 7th were exchanged for other securities in accord-
ance with the contracts. Plaintiff denied that there

was any such understanding or that there had been such an exchange of securities, and there was other evidence that tended to show that the proceeds of the securities were used to pay the general expenses of the defendants in the conduct of their business. The evidence was conflicting and, after a careful consideration, we think the jury were fully warranted in accepting plaintiff's version of the matter.

The defendants contend that even if the securities were sold in direct violation of the agreement, and although the defendants fraudulently concealed that fact, yet there would be no such conversion of the securities as would warrant a verdict in trover, as plaintiff repeatedly testified that he knew the defendants were to sell the securities, and that in such case trover will not lie. With this contention we cannot concur. When pledged property is delivered to the pledgor for a special or limited purpose to be returned later, or the proceeds thereof, to the pledgee, the latter will not lose his lien, and if the pledgor fails, neglects or refuses to return the property or the proceeds, an action will lie against him for conversion. *Hollister v. Dinsmore,* 191 Ill. App. 377; *Colburn v. Commercial Security Co.,* 172 Ill. App. 510; *Cooper v. Ray,* 47 Ill. 53; *Rice & Bullen Malting Co. v. International Bank,* 185 Ill. 422; *Kellogg v. Tompson,* 142 Mass. 76; *Way v. Davidson,* 12 Gray (Mass.) 465; *Hays v. Riddle,* 1 Sandf. (N. Y.) 248.

We think there was ample evidence to sustain the verdict that the securities, or the proceeds thereof, were to be returned within a specified time. In this connection it may be pertinent to note that if the defendants' version is true, viz., that the securities mentioned in two of the receipts were to be sold and the proceeds used towards the completion of the Victoria Theater building, and the securities in the other receipt were exchanged for others, it is strange that they should execute the receipts in the form they did, for it

is expressly stated in each that the defendants are to hold the property subject to plaintiff's order, for the purpose of being sold or otherwise dealt with, as the plaintiff, bailor, may direct, and when sold to pay the proceeds to him, and if for any reason the securities were not sold within 3 days they were to be returned to him.

Defendants also contend that there is a fatal variance between the allegations of the statement of claim and the proof; that it is averred in the statement of claim that plaintiff never directed any sale of the securities, while his own testimony shows that he did do so. We have examined defendants' brief and find no argument that this variance was pointed out on the trial. If this had been done the variance could have been obviated, and it is elementary that such point cannot be made in these circumstances. But in any event we think that the variance is not material. It is averred in the statement of claim that plaintiff did not authorize the sale and he testified that he did authorize it to be made in Toledo under the circumstances mentioned; and while it would have been more accurate for plaintiff to have averred that he did not authorize the sale of the securities as made, yet we think the variance is not substantial.

The defendants further contend that the verdict is excessive, for the reason that it is more than the amount owed by the defendants to Mrs. Knight's estate. It is true that where an action of trover is brought to recover for the conversion of securities which are collateral to a loan, the verdict should be the value of the securities at the time of conversion with interest thereon, provided the indebtedness for which the collateral is held equals or exceeds such value, but if the amount of the indebtedness is less than the value of the securities converted, then no recovery can be had in excess of the indebtedness, although the securities were worth more. *Hollister v. Dinsmore, supra.* It is also

argued on this point that the contracts between the defendants and Mrs. Knight were tainted with usury, and therefore no interest should be allowed on the loans made; that the contracts between the parties clearly showed that the transactions were simply loans made by Mrs. Knight and were worded in an endeavor to evade the statute against usury. From an examination of the written contract, we think it clear that the amounts advanced by Mrs. Knight to the defendants were loans, and as the contract provided for the payment of 10 per cent. it was usurious, and therefore no interest is recoverable. Section 6, ch. 74, Rev. St. (J. & A. ¶ 6695). Plaintiff, however, argues that the moneys advanced by Mrs. Knight constitute separate transactions from the ones involved in the instant case; that the former are based on written contracts entered into between Mrs. Knight and the defendants, while the instant case is based on the three receipts given by the defendants to plaintiff. This argument is beside the point. The contracts between Mrs. Knight and the defendants become important only in determining the amount due from the defendants in excess of which plaintiff cannot recover. Plaintiff also argues that even if the contracts were usurious, no credit can be given for the payment of usury where it is voluntarily made as here. This is not the law. As long as any portion of the debt remains unpaid, usury may be set up by the debtor by way of defeating the collection of the balance. *Mason v. Pierce,* 142 Ill. 331; *Meers v. Stevens,* 106 Ill. 549. There is no dispute that the defendants paid to Mrs. Knight 10 per cent. on the moneys advanced, or $11,786.11, and defendants should be given credit for this amount. Defendants further argue that commissions of one per cent. paid to plaintiff in obtaining the Victoria Theater business and his mother's business for the defendants are also usury and should be deducted. It appears from the evidence that plaintiff was employed by defendants and it was

agreed that defendants would pay him one per cent. on any business that he might bring to them; that they paid him one per cent. commission on the Victoria Theater contract, which business he brought to them, and that he was also paid one per cent. on his mother's business. There is no dispute as to the facts in this regard, but we think it obvious that the commissions paid to plaintiff can in no way be considered in the light of usury. The undisputed evidence is that on March 15, 1914, plaintiff rendered a statement of the account showing the amount which he claimed due from the defendants to him. From this it appears that $70,000 was loaned by Mrs. Knight in her lifetime and $20,000 by plaintiff as her administrator, making a total of $90,000. There appears a credit of $43,678.06, and as we held that no interest could be collected, the balance due as shown by the statement is $46,321.94. From this should be deducted the amount of the usury, $11,786.11, which leaves a balance of $34,535.83. The value of the securities involved in the instant case, as shown by the undisputed evidence, together with interest thereon from the several dates they were converted by the defendants, was $58,920.85. The verdict was for $58,800, but in no event could it exceed the amount of the indebtedness due from the defendants. Defendants, however, contend that the $15,000 loaned by plaintiff to the defendants March 1, 1912, cannot be considered as a part of the indebtedness due plaintiff as there was no agreement that the securities held by plaintiff should be collateral for this amount; that this was simply a loan without any collateral, and that the court so instructed the jury, but that the instruction was ignored. The court did so instruct the jury, but we think there was sufficient evidence to warrant the jury in finding that it was understood by the parties that the collateral held by the plaintiff should apply to this amount as well as to the other advances made to defendants. Plaintiff gave his check as administra-

tor for this amount and took a receipt therefor, which does not state that the securities are to be held as collateral, but recites that the loan is to bear interest at 6 per cent. for 30 days, and after 30 days the amount might be withdrawn upon 5 days' notice to the defendants. May 15th following, plaintiff again gave his check as administrator for $5,000 and received a receipt which states it is "to apply on collateral arrangement, collateral for same to be delivered three days from date." The evidence further shows that in the itemized statement which plaintiff submitted to defendants, March 15, 1914, was included this $20,000 and no objection was made that this item was improperly included. Furthermore, as to the $15,000, the receipt given for this recites that interest is to be paid at 6 per cent. but one of the defendants testified that they had paid 10 per cent. which is the same rate that was paid under the original contracts with Mrs. Knight, and defendants sought credit for the usurious interest paid on this sum, thereby treating it as a part of the entire transaction. If it was separate and distinct, of course it should not have been brought into the case at all, but these two items of $15,000 and $5,000 were brought into the case by the defendants. Plaintiff in his statement to the defendants above mentioned also showed that he had sold certain securities under the original contract and gave credit on this $20,000 as well as on the $70,000. In determining what debts are secured by collateral the whole transaction between the parties is to be looked to—the intention of the parties is the thing to be ascertained. Jones on Collateral Securities (3rd Ed.), sec. 362; Story on Bailments, sec. 301. In view of all the circumstances, we think the jury were fully warranted in including the $20,000 in the indebtedness for which the securities were held as collateral. And although the court gave instructions to the jury that they should not include the item of $15,000, yet the defendants cannot complain of this

action for they have suffered no legal wrong. *Mc-Nulta v. Ensch*, 134 Ill. 46; *Chicago, R. I. & P. Ry. Co. v. Carey*, 90 Ill. 514. And it must be presumed that this was the view of the trial judge from the fact that he overruled a motion for a new trial.

We have carefully considered the other points urged by the defendants, but find none of them of sufficient importance to constitute reversible error.

As the value of the securities converted was greater than the amount of the indebtedness due from the defendants, and the verdict was for the value of the securities, it is too large; but as the amount of the indebtedness is not in dispute, the error in entering judgment for too large a sum can be cured here. Plaintiff was entitled to a verdict for $34,535.83, as of March 20, 1916, the date when the jury returned their verdict, and to this sum should be added interest at the rate of 5 per cent. to the present, which is $3,717.40. This makes a total of $38,253.23. The judgment is accordingly modified and, under the authorities of sections 110, 111, Practice Act, J. & A. ¶¶ 8647, 8648 (*Pearsons v. Bailey*, 2 Ill. 507; *People v. Board Sup'rs Madison Co.*, 125 Ill. 9; *Wilmans v. Bank of Illinois*, 6 Ill. 667; *Commercial Ins. Co. v. Scammon*, 123 Ill. 601; *Borg v. Chicago, R. I. & P. Ry. Co.*, 162 Ill. 348, and *Dean & Son, Ltd. v. W. B. Conkey Co.*, 180 Ill. App. 162), judgment will be affirmed in favor of plaintiff and against defendants for $38,253.23.

*Judgment modified and affirmed.*

MR. PRESIDING JUSTICE TAYLOR dissenting:

Mr. Presiding Justice Taylor dissents, being of the opinion that the evidence shows an indebtedness but not a conversion.