Leo Mongoven, Appellant, v. Edwin C. Watts et al., Appellees.

Gen. No. 8,128.

Heard in this court at the October term, 1929. Opinion filed February 3, 1930. Rehearing denied June 24, 1930.

MONAHAN & MONAHAN, for appellant.

RALPH J. DADY and LESLIE A. NEEDHAM, for appellees. SIDNEY H. BLOCK, *Pro Se.*

MR. PRESIDING JUSTICE BOGGS delivered the opinion of the court.

On April 18, 1928, appellant filed a bill in the circuit court of Lake county, setting forth that on December 21, 1921, one Sarah Watts, since deceased, and

appellee Edwin G. Watts, her husband, executed a promissory note for $20,000, due five years after date, with interest at the rate of 6 per cent per annum, payable to the order of themselves, and by them indorsed; that said notes were secured by a trust deed of even date, conveying certain described real estate, etc., which trust deed was filed for record in the recorder's office of said county; that appellant was the legal holder and owner of said notes and trust deed; that no part of said principal sum or any interest thereon had been paid, praying foreclosure, etc. Appellee Edwin G. Watts, the husband of Sarah Watts, deceased, and appellees, the heirs of Sarah Watts, deceased, and of one Arthur E. Nugent, deceased, were made parties defendant to said bill.

A guardian *ad litem* was appointed to represent Mary F. Deming, Jr., infant defendant, and filed an answer, praying strict proof, etc. The joint and several answer of the adult defendants to said bill, appellees herein, as finally amended, sets forth in substance that appellant was claiming that in June, 1922, Arthur E. Nugent delivered the trust deed and notes above set forth to appellant, to be held by him as collateral security "upon some indebtedness or open account, not in writing, which complainant claims said Nugent owed complainant at the time of such delivery, or might thereafter owe complainant, . . . but these defendants state that if complainant ever lawfully obtained possession of said trust deed and interest and principal notes (which defendants deny) as such collateral security, such indebtedness, if any, . . . was on an open account, not in writing," and that the same was barred by the statute of limitations.

A replication being filed to said answer, the cause was referred to a special master to take the evidence and to report the same, with his conclusions thereon. Said special master took and reported the evidence in said cause, with the recommendation that said bill be

dismissed. Exceptions thereto by appellant were overruled, and a decree was entered, dismissing said bill for want of equity. To reverse said decree, this appeal is prosecuted.

The evidence discloses, and it is conceded by the parties that the premises covered by said trust deed were purchased by Arthur E. Nugent in 1920, for some $27,000; that on December 21, 1921, Nugent without consideration, conveyed said premises to his sister, Sarah Watts; that on the same day Sarah Watts and appellee Edwin G. Watts, her husband, at the request of Nugent, executed the note and trust deed here in question; that the deed from Nugent to his sister, and said trust deed were duly recorded in said county; that said notes and trust deed were drawn by Nugent's attorney, and upon the execution thereof, were delivered to Nugent; that nothing was due from the Wattses to Nugent at the time of the execution of said notes and trust deed, and that he, Nugent, paid nothing therefor. In June, 1922, said notes and trust deed were delivered to appellant, and have been in his possession or control up to the filing of said bill; that on April 21, 1924, Sarah Watts and her husband, reconveyed said premises to Nugent subject to said trust deed, and without consideration. Counsel for appellant in their brief and argument, at page 13, say:

"The question this court is called on to determine is whether the trust deed and notes in question were placed in the hands of the complainant as collateral security for the repayment to complainant of some sum of money advanced or to be advanced by him, the amount of which is not established."

On the other hand, counsel for appellees insist: (1) That said "securities were pledged; not given in payment or satisfaction of any debt, and Nugent retained general title thereto." (2) That "the papers having been put up as a pledge, the burden of proving the amount of the indebtedness, if any, is on appellant."

Two principal questions therefore, arise on the record: First, whether or not said securities were delivered to appellant as a pledge for an existing indebtedness or an indebtedness thereafter to be created, and, second, if said securities were delivered to appellant as such pledge on whom rests the burden of proving the amount of the same.

Before considering these questions, it will be necessary to determine the competency of appellant as a witness in his own behalf. Appellant testified, subject to objection, to the effect that in June, 1922, at the time said notes and trust deed were delivered to him, Nugent owed him $21,000, which, with accrued interest to the time of the hearing, amounted to $32,805. Appellees, the owners of the real estate in question, were defending as the heirs of Nugent. Appellant was therefore not a competent witness in his own behalf. Cahill's St. ch. 51, ¶ 2; *Forbes v. Snyder,* 94 Ill. 374–378; *Michael v. Mace,* 137 Ill. 485–496; *Harris v. Young,* 298 Ill. 319–331; *Halladay v. Blair,* 223 Ill. App. 609, 611–612.

The only remaining evidence in the record with reference to what was said and done at the time said notes and trust deed were delivered to appellant is contained in the testimony of Rudolph Frankenstein and C. M. Strening, witnesses on the part of appellant.

Frankenstein, an attorney, testified that he saw Sarah Watts and appellee Edwin G. Watts sign said note and trust deed; that when signed, they were delivered to Nugent; that Nugent turned them over to the witness, and that he caused the trust deed to be recorded. He further testified: "After I had held the trust deed and notes several months, Mr. Nugent came in my office in the Ashland block with two gentlemen, and the notes and trust deed were turned over to one of the two gentlemen. If my recollection serves me right, one of the gentlemen was Leo Mongoven. . . . At the time Arthur Nugent turned these notes over to

Mongoven, Nugent said he was either borrowing money or had received money from Mongoven, and these notes and trust deed were turned over to Mongoven as indemnity or security for the advance. . . . I don't recall the amount, and I don't recall what was said about that.''

Strening testified that he was an attorney, and became acquainted with Nugent about 1917 or 1918; that he had known appellant since about 1920; that he first saw the trust deed and notes the latter part of May or the first of June, 1922, in Frankenstein's office; that Frankenstein handed the notes and trust deed to Nugent, ''who in turn handed it to me and I gave it to Mongoven. At that time Mr. Nugent said to Mr. Mongoven, 'In case anything happens to me, these will protect you for the money I owe you.' '' On cross-examination he further testified: ''Nugent said to me that he was indebted to Mongoven and he wanted to protect Mongoven in case anything might happen to him. . . . I knew Nugent was protecting Mongoven on money he owed Mongoven. I don't know anything about how much. I do not know whether it was $100 or $100,000, but I knew it was something more than $100. How I knew that, . . . . I saw Mongoven give Nugent around $2,500 or $3,000 at that time. That occurred about a year or so before this. That is the only time I ever saw Mongoven give Nugent any money. Neither Nugent nor Mongoven said anything on this day as to how much he was to be protected on this mortgage.''

Eliminating the testimony of appellant, the foregoing is, in substance, all of the evidence with reference to what was said and done at the time said notes were turned over to appellant. Counsel for appellant insist that, in the absence of other proof, it would be presumed that the amount to be secured was the amount of said note.

Appellees' position that the notes and trust deed were pledged to appellant to protect or secure him for a past or future indebtedness, is well taken. *Peacock v. Phillips,* 247 Ill. 467; *Farson v. Gilbert,* 114 Ill. App. 17–19; 21 R. C. L., p. 633, par. 3; 31 Cyc., p. 797, par. 13. Said notes and trust deed having been pledged to appellant, the question next arises as to who has the burden of proof in establishing the amount of the indebtedness for which said pledge is held.

"The lien is measured by the extent of the advances and the amount of the debt." *Freutel v. Schmitz,* 299 Ill. 320–323, citing *Collins v. Carlile,* 13 Ill. 254; *Darst v. Gale,* 83 Ill. 136. See also *Schaeppi v. Glade,* 195 Ill. 62–66.

This point is not well taken. The evidence offered by appellant discloses that said notes and trust deed were not delivered to appellant as a pledge or payment for any specific amount; in other words, the evidence discloses that the parties did not undertake at that time to fix the amount of said indebtedness.

Appellant also insists that he is in the position of a purchaser for value "in the ordinary course of trade." An examination of the quoted testimony of the witnesses Frankenstein and Strening clearly discloses that this point is not well taken.

Counsel for appellees insist, not only that appellant is not a holder of said notes in due course, but that there is no evidence in the record which would warrant any relief whatever to appellant on his bill filed herein. This position of appellees is untenable. According to the undisputed testimony of Strening, some year or so prior to the delivery of said notes and trust deed to appellant, he "saw Mongoven give Nugent around $2,500 or $3,000." This testimony is in harmony with appellees' contention that the securities were pledged, not given in payment or satisfaction of any debt.

In connection with appellee's plea of the statute of limitations, it is only necessary to say that no refer-

ence whatever was made to said plea in their brief and argument. It will therefore be taken as waived. It might be observed, however, that in view of the fact that Nugent had delivered said securities as collateral or as a pledge to secure appellant for sums advanced or to be advanced by him, and which note did not fall due by its terms until December 21, 1926, the plea of the statute of limitations would not be good.

Appellees also insist against the right of appellant to foreclose said trust deed that the reconveyance by the Wattses to Nugent created a merger and rendered said trust deed of none effect. The evidence discloses that, prior to said reconveyance, Nugent had pledged said notes and trust deed to appellant. There would therefore be no merger, as against appellant. *Edgerton v. Young,* 43 Ill. 464–468; *Dunphy v. Riddle,* 86 Ill. 22–28; *Farrand v. Long,* 184 Ill. 100–108; *Moffet v. Farwell,* 222 Ill. 543–548.

The law recognizes the right of persons to pledge personal property or securities for past indebtedness, or for future advances. *Farson v. Gilbert,* 114 Ill. App. 17–19; 21 R. C. L., p. 633, par. 3; 31 Cyc., p. 789, par. 1; 31 Cyc., p. 797, par. 13. A lien of this character "is measured by the extent of the advances and the amount of the debt." *Freutel v. Schmitz,* 299 Ill. 320–323, citing *Collins v. Carlile,* 13 Ill. 254; *Darst v. Gale,* 83 Ill. 136. See also *Schaeppi v. Glade,* 195 Ill. 62–66.

The next question to be determined is, for what amount has appellant a lien, and can it be enforced in this proceeding.

The only competent evidence that appellant offered as to the amount of his claim is the testimony of Strening. Under his testimony the amount could not be more than $2,500. Appellant would be entitled to interest on this amount at the rate of 5 per cent per annum from June, 1921, being one year prior to the delivery of said securities by Nugent. As the date of the month was not fixed by the testimony, June 15,

1921, may be taken as the date from which interest shall be computed.

Under the holding of the Supreme Court in *Jenkins v. International Bank*, 111 Ill. 462–480, and *Peacock v. Phillips*, 247 Ill. 467, appellant has the right, as such pledgee, to foreclose said trust deed for the amount of his lien as against appellees, the owners of the premises in question as the heirs of Arthur E. Nugent, deceased, the amount of the recovery, however, to be limited to $2,500, with interest thereon at the rate of 5 per cent per annum from June 15, 1921.

For the reasons above set forth, the judgment of the trial court will be reversed and the cause will be remanded, with directions to sustain exceptions to the special master's report in part, and to enter a decree for foreclosure in favor of appellant for the amount above specified.

*Reversed and remanded with directions.*