(No. 25305.—

JOHN P. IMMEL, Trustee, Appellee, *vs.* THE TRAVELERS IN-
    SURANCE COMPANY *et al.*—(THE TRAVELERS INSUR-
    ANCE COMPANY, Appellant.)

*Opinion filed February 21, 1940—Rehearing denied April 3, 1940.*

Kirkland, Fleming, Green, Martin & Ellis, (Weymouth Kirkland, Howard Ellis, William H. Symmes, David Jacker, and John M. O'Connor, Jr., of counsel,) for appellant.

Rathje & Meyering, (Franklin J. Stransky, of counsel,) for appellee.

Mr. Justice Shaw delivered the opinion of the court:

John P. Immel, trustee, brought suit in the circuit court of Cook county on a life insurance policy issued by the Travelers Insurance Company. The circuit court entered a decree for the plaintiff in the amount of $25,000 which the Appellate Court affirmed, and the case is before us on leave to appeal granted.

On April 1, 1920, the Travelers Insurance Company issued an insurance policy on the life of Robert Volk, the proceeds of the policy being made payable to Volk's administrators, executors, or assigns. The policy contained the following condition with respect to assignment: "No assignment hereof shall be binding upon the company unless made by an instrument in writing indorsed upon this contract or attached hereto, nor unless a duplicate shall be furnished to the company forthwith upon its execution. The company shall not be responsible for the validity of any such assignment. Any claim made under an assignment shall be subject to proof of interest and extent thereof." Volk assigned the policy to the Mont Clare Lumber and Supply Company on April 26, 1920. Notice of this assignment was communicated to the insurance company and a copy of the assignment was attached to the policy. The rec-

ord shows that Volk was the president and principal stockholder of the Mont Clare Lumber and Supply Company.

Early in 1922, the Mont Clare Lumber and Supply Company engaged in a program of financing. Bonds were issued by the company in the amount of $100,000, pursuant to a trust deed dated February 6, 1922, which conveyed certain real estate to John P. Immel, trustee. The trust deed further provided that the lumber company would at all times place and keep in reputable companies, insurance in the sum of $25,000 on the life of Robert Volk. These policies were to be deposited with the Immel State Bank upon its request.

On May 15, 1922, Robert Volk, Rose Volk, his wife, and the lumber company, made an affidavit that the original policy issued April 1, 1920, by the Travelers Insurance Company had been lost or destroyed. This affidavit was presented to the Rockwood-Badgerow Company, agents of the Travelers Insurance Company in Chicago, and was forwarded to the home office. Shortly thereafter, a duplicate policy was issued, containing the assignment from Volk to the lumber company. This duplicate policy was delivered, but never assigned on the back of the policy or otherwise, to John P. Immel, trustee, and was deposited by him, together with the trust deed, in a safety deposit box in the Immel Safe Deposit Company. The Travelers Insurance Company never received any notice of this delivery of the policy in accord with the terms thereof. This duplicate policy issued May 24, 1922, is the basis upon which this suit was commenced.

Late in 1926, an unidentified person presented to Annie E. Johnson, an agent of the Travelers Insurance Company in Chicago, an envelope containing a partially burned insurance policy issued by the Travelers Insurance Company on the life of Robert Volk in the sum of $25,000. A request was made that the insurance company issue another policy in its place. Thereupon, another duplicate policy

of insurance was issued by the Travelers Insurance Company bearing date of November 26, 1926. This second duplicate policy subsequently came into the possession of Robert Volk.

On October 1, 1928, Robert Volk, as president of the Mont Clare Lumber and Supply Company, executed an assignment to Robert Volk, individually, of the right, title, and interest of the lumber company in his policy of insurance issued November 26, 1926. This assignment was also signed by George Crowell, the secretary of the Mont Clare Lumber and Supply Company and was forwarded to the insurance company. A copy of the assignment was subsequently attached to the second duplicate policy. At the time the assignment was executed and forwarded to the insurance company it did not have the corporate seal of the lumber company affixed thereto. This was attached at some later date.

Volk then executed a change of beneficiary on October 22, 1928, substituting the Noel State Bank, as trustee, in place of his administrator, executors, or assigns. This change of beneficiary was consented to by the insurance company and was indorsed on the second duplicate policy, in writing. Thereafter, on January 23, 1930, Volk executed an insurance trust, designating the Noel State Bank as trustee, and deposited this second duplicate policy among the assets of this trust. February 16, 1930, Volk committed suicide. The proceeds of this policy were paid to the Noel State Bank, as trustee, the designated beneficiary as shown by the records of the Travelers Insurance Company.

Immel's claim against the insurance company is based upon a theory of negligence and it was on this theory the Appellate Court affirmed the judgment in his favor. The Appellate Court found, and the appellee here contends, that the deceased Volk perpetrated a fraud on the bondholders and that this fraud was made possible through the carelessness of the insurance company in issuing the duplicate

policies; that the insurance company was negligent in recognizing the fraudulent reassignment from the lumber company back to Volk, and in paying the proceeds thereof to the wrong person.

In deciding this case it is of first importance that we avoid a certain fundamental confusion which seems to run through this record. We must not permit ourselves to confuse the contract of insurance itself, with the policy, which is a mere written evidence of that contract. The contract itself governs the rights of the parties and their liabilities to each other, and this must remain true whether that contract is evidenced by one or several written instruments. It is also necessary to bear in mind that the policy is not a negotiable instrument and that it is governed by its own terms. The parties to a contract may agree that it may not be assigned at all and such a provision is valid. (*Mueller* v. *Northwestern University*, 195 Ill. 236.) An insurance company may lawfully provide that any policy it issues can be assigned only on such terms as are therein provided, and if such terms are not complied with the assignment is invalid as against the company. 37 Corpus Juris, 430, and cases there cited; 2 Cooley's Briefs on Insurance, 1829.

Appellee concedes the correctness of this rule as to an assignment and also concedes that an insurance policy is not a negotiable instrument. He says, however, that he does not claim by way of assignment but by virtue of a pledge, and says there is a difference between an assignment and a pledge. This argument leads back to one of the confusions which we noted above and which we must avoid— *i.e.*, the confusion of the evidence of the thing for the thing itself—considering the policy of insurance, which is evidence of a contract, as being the contract itself. The policy is concededly not negotiable and the contract itself provides the terms upon which it may be assigned.

It is quite true, as the appellee insists, that there is a difference between an assignment and a pledge, but that

difference is that existing between a part of a thing and the whole thereof. In other words, an assignment is an essential part of a pledge, where the thing pledged can be delivered only by assignment. (21 R. C. L. 649; *Christian* v. *Atlantic & N. C. R. Co.* 133 U. S. 233, 10 Sup. Ct. 260; *Casey* v. *Cavaroc,* 96 id. 467.) In the case last cited the United States Supreme Court pointed out that both at common law and under the civil law possession is of the essence of a pledge and that without possession no privilege can exist as against third persons. These rules are supported by many authorities (21 R. C. L. 642, *et seq.*) and are in accordance with the definition of pledge adopted by this court in *Corbett* v. *Underwood,* 83 Ill. 324, to the effect that a pledge is the lien created by the delivery of personal property by the owner to another, upon an express or implied agreement that it shall be retained as a security for an existing or future debt; that to create a pledge, the pledgee must have the possession and control of the property. In the absence of a valid assignment and notice, a debtor, under a non-negotiable contract, may safely deal with his creditor. *Security Warehousing Co.* v. *Hand,* 206 U. S. 415, 21 Sup. Ct. 720.

No decision of any court of last resort holding contrary to what we have said above, on any such facts as are before us, has been cited. Appellee, however, strongly relies on the holding and certain language in *Travelers Insurance Co.* v. *Haley,* 44 N. Y. S. 1043. The case is not from a court of appellate jurisdiction, and, in any event, is not in point, because in it the company stood indifferent as between two claimants and filed its bill of interpleader. Other cases of interpleader are to be found, but they have no bearing on this controversy and need not be discussed.

We regard as immaterial all those parts of the record and argument which are concerned with the issuance of duplicate policies and payment, as it is claimed, to the wrong person. We fail to see how it could either improve or impair the plaintiff's case if the company paid to one or

several wrong persons. He must stand on his own contractual rights, if any, and payment to another could not destroy such a right if he actually had it. We do not think there is any question of negligence in the case, but if there is any, it is chargeable directly to the plaintiff, who not only did not require nor secure any assignment whatever, but did not notify the company that he was holding the policy and did not commence suit until four years after the policy holder committed suicide. Within a few days after Volk's death and notwithstanding the manner of his death, the company demonstrated its entire good faith by making payment in full to that person who appeared on its books to be the rightful owner of the contract. The only person guilty of negligence is the plaintiff, and those implications of fraud which the arguments contain are not only unsupported by evidence but refuted by the conduct of the company.

It is essential to the prompt payment of losses that life insurance contracts be denied negotiability, and prompt payment of losses has come to be one of the most desirable of the attributes of such contracts. Life insurance is depended on for the payment of estate taxes, for the education of children, for all forms of immediate cash demands and for the very living of the family of the deceased policy-holder pending administration. Any impairment of this vital feature of the most general American contract would be of serious consequence to millions of people, and yet this very thing would result from any conclusion different from that which we have arrived at. Under the law, there is no reason why duplicate contracts may not be issued as the convenience of the policy-holder may require. If, however, it should be held that these contracts are negotiable or transferable without notice, then the companies will, of very necessity, require a substantial bond for replacement. If a company must pay at its peril, with the ever-present possibility of secret liens, or that another policy may be outstanding, then come the dangers of forgery, theft and other

frauds, and against these there would be little possibility of protection. Even by interpleader, it would be impossible to know who should be made parties. We believe that the only safe course is to continue to hold, as we do, that these policies are not negotiable, that they are not contracts but merely evidence of contracts, and that the companies, in good faith, may safely pay promptly to those shown by their own records to be entitled to payment.

The judgment of the Appellate Court for the First District and the decree of the circuit court of Cook county are each reversed, and judgment will be entered here, for the defendant company.

*Judgment of Appellate Court reversed.*
*Decree of circuit court reversed.*
*Judgment, here, for defendant company.*