ARCO PETROLEUM PRODUCTS COMPANY, Plaintiff and Counterdefendant-Appellee, *v.* R & D AUTOMOTIVE, INC., Defendant—(E. L. "Dude" Watts, Defendant and Counterplaintiff-Appellant).

First District (5th Division)   No. 83—237

Opinion filed September 30, 1983.

Berlin & Braude, of Chicago, for appellant.

Lord, Bissell & Brook, of Chicago (Robert A. Knuti and Nick J. Di Giovanni, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, Arco Petroleum Products Company (Arco), filed suit for breach of contract against defendants, R & D Automotive, Inc. (R & D), a corporation, and its president E. L. Watts (Watts), alleging, *inter alia*, that plaintiff was holding a $50,000 certificate of deposit pledged by Watts as collateral for defendants' indebtedness under a security agreement between the parties. Watts filed a counterclaim seeking the return of the certificate or judgment for the value thereof. Subsequently, judgment by agreement was entered against defendant (R & D) and both parties moved for summary judgment on the issue of entitlement to the certificate of deposit. The trial court entered summary judgment for plaintiff, and Watts appealed.

The issues on appeal are: (1) whether the trial court properly granted summary judgment in favor of plaintiff; and (2) whether genuine issues of material fact remain as to either the formation or duration of the contract of pledge between the parties.

The following facts are pertinent to our decision.

In May or June of 1980, plaintiff agreed to supply defendants with AC Delco automotive parts for wholesale distribution in accord-

ance with a TBA Reseller Agreement. Pursuant to the terms of a financing statement and security agreement between the parties, plaintiff extended a $75,000 line of credit to defendants and acquired a security interest in defendants' inventory, accounts receivable, and the proceeds thereof.

By October of 1980, however, plaintiff had extended approximately $125,000 of credit to R & D. Plaintiff thereupon advised Watts that additional security in the form of a letter of credit or a pledge would be required before credit in excess of $75,000 would be extended to him.

After discussing plaintiff's request for additional security with R & D's major customer, Watts and the customer agreed to pledge $50,000 and $100,000 certificates of deposits to plaintiff respectively.

Subsequently, plaintiff sent a blank pledge of certificate and power of attorney to Watts which provided, *inter alia*, that the $50,000 certificate of deposit was to be delivered as collateral security for the full performance of the TBA Reseller Agreement and "for the payment of any amount for which R & D Automotive, Inc. may be indebted to [Arco] ***." The power of attorney assigned Watts' certificate of deposit to Arco. Both instruments were executed by Watts on October 11, 1980, and were returned to plaintiff with a typewritten memorandum dated October 6, 1980, which provided in pertinent part: "Per our phone conversation I am clarifying our agreement. We are giving you a $100,000 C.D. as a guarantee for extending credit to R & D Automotive, Inc. in excess of $125,000. We hereby authorize the sale of said C.D. subsequent to our receiving a 15 day written notice at our place of business *** [of R & D] being delinquent in payments to [Arco] in excess of $125,000 under normal terms per the TBA Reseller agreement ***. Our liability shall be restricted to the amount owed and past due that is in excess of $125,000.00. We have absolutely no liability on the 1st $125,000.00 of indebtedness of [R & D] to [Arco]. This agreement shall be for a term of six months from October 6th, 1980 to April 5th, 1981."

Watts had signed this memorandum and left blank a space for plaintiff's signature.

Upon receipt of these documents plaintiff informed Watts that the pledge as submitted was acceptable although the six-month-term limitation imposed by Watts was "under review."

During October 1980 through April 5, 1981, plaintiff shipped additional goods to defendants on credit in excess of $125,000.

Throughout this time, Watts requested that plaintiff return his pledge and certificate. Plaintiff offered to return the certificate in exchange for a substitute form of security from Watts, *e.g.*, a letter of credit, in an amount equal to the certificate, but Watts declined to do so.

On April 24, 1981, Watts met with plaintiff's Field Credit Manager, R.F. Boeke, and requested that plaintiff cancel his pledge and return the certificate to him. Although Boeke offered to return the certificate upon condition that Watts provide a substitute form of security, Watts again told him to retain it as security for the credit previously extended to R & D.

Defendants subsequently defaulted in their obligations under the security agreement and, on June 11, 1981, plaintiff filed a complaint in *replevin*. This was later nonsuited. Plaintiff then brought suit for breach of contract against defendants, and Watts filed a counterclaim seeking the return of his certificate or judgment for the value thereof. By agreement, judgment was entered against defendant in the amount of $194,731.86, and both parties moved for summary judgment on the issue of entitlement to the certificate.

Following a hearing, the trial court denied Watts' motion and granted plaintiff's motion for summary judgment. Defendant Watts appeals.

OPINION

Initially, we note the confusion engendered by both parties' interchangeable characterization of the contract in issue as both a "pledge" and a "guaranty."

■ A pledge is the lien created by the delivery of personal property by the owner to another, upon an express or implied agreement that it shall be retained as a security for an existing or future debt, and to create a pledge, the pledgee must have the possession and control of the property (*Immel v. Travelers Insurance Co.* (1940), 373 Ill. 256, 26 N.E.2d 114). The necessary elements of a pledge are a pledgor, a pledgee, a debt or obligation, and a contract of pledge. 30 Ill. L. & Prac. *Pledges* sec. 11 (1957).

A guaranty, on the other, is a third party's promise to answer for payment of an obligation if the person primarily liable fails to make payment or perform an obligation. *Gridley v. Capen* (1874), 72 Ill. 11.

As a practical matter, a party's exposure is limited with a

pledge because the obligation is secured only by the asset pledged. However, in contrast, a guaranty requires that a party place all his assets behind a guaranty, resulting in a primarily unlimited exposure.

■ Thus, while the contract between the parties in the instant case might arguably be labeled a guaranty, in the sense that Watts, within his capacity as president of R & D, authorized the sale of the C.D. in the event of a default by R & D in the body of the contract, we nonetheless believe that the transaction in issue is correctly characterized as a pledge. Consequently, in order to determine what debts are secured by collateral in the contract of pledge, the whole transaction between the parties must be looked to and the intention of the parties must be ascertained. *Knight v. Seney* (1918), 211 Ill. App. 324, *aff'd* (1919), 290 Ill. 11, 124 N.E. 813.

In the present case, the thrust of Watt's central argument is that both the contract of pledge and the accompanying October 6, 1980, memorandum were void because of a defect in the formation of the contract.

■ Watts maintains that no meeting of the minds existed between the parties because submission of the October 6 memorandum to plaintiff constituted a counteroffer which precluded an effective acceptance. We do not find this to be established, however, by the record.

Our review of the record indicates that Watts did not alter the terms of the unconditional pledge which recited that he was delivering the C.D. as "collateral security for the payment of any amount for which [R & D] may be indebted to [Arco] and which further authorized its sale in the event of default." It is also clear that plaintiff, while agreeing to review the limitations set forth by Watts in the October 6 memorandum, did not accede to these limitations by execution and return of the document.

Watts maintains, however, that plaintiff's acceptance of the October 6 memorandum became a condition precedent to the formation of the contract. We do not agree.

In the present case, neither party disputes that Watts accepted the shipment of plaintiff's goods to R & D from October 1980 through April 1981, despite his continuing requests for plaintiff to approve the limitations on his pledge.

■ Since it is axiomatic that an offer can be accepted by the performance of a desired act (17 Am. Jur. 2d *Contracts* sec. 45 (1964)), an offeree may also be regarded as having accepted a ten-

dered contract by accepting the benefits of the contract. (*Toto v. Durand & Kasper Co.* (1919), 214 Ill. App. 449.) As stated in the Restatement of Contracts sec. 45 (1932): "If an offer for a unilateral contract is made, and part of the consideration requested in the offer is given or tendered by the offeree in response thereto, the offeror is bound by a contract \*\*\*." Accord, *Central National Bank & Trust Co. v. Consumers Construction Co.* (1972), 5 Ill. App. 3d 274, 282 N.E.2d 158.

With the foregoing legal principles in mind, we find that Watts' October 6 memorandum did not, by operation of law, repudiate, reject or establish nonreliance upon the contract of pledge originally executed by Watts, and that Watts agreed to the terms of the unconditional pledge by accepting plaintiff's extension of credit to R & D. Consequently, we find that a valid and binding contract resulted.

Similarly, we reject Watts' argument that the contract of pledge limited the use of the pledged certificate of deposit as collateral only from October 6, 1980, to April 5, 1981.

■ As a general rule, the pledgee may ordinarily satisfy the debt out of property pledged, pursue his remedy against the pledgor or hold the pledged property until the debt is paid. 30 Ill. L. & Prac. *Pledges* sec. 51 (1957).

■ Although Watts persistently argues that the pledge was of limited duration in accordance with the October 6 memorandum, unexecuted by plaintiff, there is nothing on the face of the unconditional pledge itself which indicates any time limitation. It is clear that if a limitation upon the scope of the lien is intended, such limitation must be impressed in the agreement which is executed. (*Kramlich v. Home Federal Savings & Loan Association* (1974), 26 Ill. App. 3d 430, 325 N.E.2d 657.) In *Kramlich*, the court, citing *Union Brewing Co. v. Inter-State Bank & Trust Co.* (1909), 240 Ill. 454, 461, 88 N.E. 997, stated the well-settled rule: "The terms of the contract under which the property is pledged may be such as to authorize it to be held for the satisfaction of other debts in existence at the time of the execution of the contract *and also for future advances which may be made by the pledgor.*" (Emphasis added.) (See also *Immel v. Travelers Insurance Co.* (1940), 373 Ill. 256, 26 N.E.2d 114; *Mongoven v. Watts* (1930), 258 Ill. App. 106.) As the *Mongoven* court observed: "A lien of this character [a pledge] 'is measured by the extent of the advances and the amount of debt.'" 258 Ill. App. 106, 113.

■ Where, as here, the pledge recites that the certificate of de-

posit is to be delivered as collateral security "for the payment of any amount for which [R & D] may be indebted to [Arco]," we are of the opinion that the executed pledge contained a clear expression of the intent that the collateral was to be used for future, as well as past advances.

As a result of this conclusion, we find that the contract of pledge was not terminated by the expiration of the six-month term alluded to in the October 6 memorandum.

Accordingly, we find that the trial court properly granted plaintiff's motion for summary judgment on the issue of the entitlement to the certificate.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

WILSON, P.J., and SULLIVAN, J., concur.