PAUL SCHAEPPI

*v.*

JOHN H. GLADE *et al.*

*Opinion filed February 21, 1902.*

1. MORTGAGES—*a mortgage is not a lien until a debt or liability to be secured is created.* A mortgage without any debt has no effect as a lien, and it can only take effect from the time when some debt or liability secured by it is created.

2. SAME—*time when trust deed became effective may be shown in proceeding to foreclose.* Where the owner of a trust deed covering two lots seeks foreclosure, claiming priority over two other trust deeds covering the separate lots, respectively, and it appears that all three were filed for record simultaneously, it may be shown by extrinsic evidence, on the question of priority, that the money secured by the two trust deeds on the separate lots was to be advanced for building purposes at all events, whereas the complainant's trust deed was not to become effective unless it became necessary to draw the money thereunder to pay interest on the other two, and that the money was not drawn thereunder until after the money had been advanced under the other two.

3. RECORDING LAWS—*numbers given instrument do not give priority.* If the recorder's certificates upon two or more instruments show that they were filed simultaneously, neither instrument can be given the advantage of prior recording upon the ground that in giving them consecutive numbers one received a lower number than the other. (*Brookfield* v. *Goodrich*, 32 Ill. 363, explained.)

4. SOLICITORS' FEES—*when the allowance of solicitor's fees is proper.* Where the holder of a trust deed seeks foreclosure claiming priority over two other trust deeds, and the holders of such deeds answer setting up the priority of their deeds and file a cross-bill for foreclosure, it is proper, upon granting relief on the cross-bill and foreclosing their deeds as first liens, to allow solicitors' fees.

*Schaeppi* v. *Glade*, 95 Ill. App. 500, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding.

FRED H. ATWOOD, FRANK B. PEASE, and CHARLES O. LOUCKS, for appellant.

EDWARD C. NICHOLS, for appellee John H. Glade.

WILLIAM W. CASE, for appellee Henry Bartholomae, Jr.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The question to be decided in this case is one of priority of liens between a trust deed upon two lots in Chicago securing a note owned by appellant, Paul Schaeppi, and two trust deeds on the separate lots securing notes held severally by appellees, John H. Glade and Henry Bartholomae, Jr., executor. The question is to be decided on the following facts proved at the hearing in the superior court of Cook county:

Prior to March 9, 1894, Edward J. Bode applied to E. S. Dreyer & Co., his bankers, and explained to Edward S. Dreyer the plans he and Charles Henry Seymour had for building a double house on the two lots, for which purpose they wanted to borrow $18,000, to be secured by a mortgage for $8000 on one lot, due in five years; another mortgage on the other lot for $8000, due in five years, and a mortgage covering both lots for $2000, due in three years. He explained that he thought they would not need the $2000 unless it should be required to pay interest on the other mortgages, but that it should remain in the bank in case it was needed for interest, and if not so needed, the mortgage to be released and no interest charged. It was uncertain how long it would take to complete the building, and in case of delay the $2000 might be required. Dreyer agreed to the proposal, and a clerk in the office of the banking firm prepared drafts of notes and three trust deeds in accordance with the agreement. The notes were made payable to Adolf Nissen, a clerk of the firm, and the trust deeds securing them were made to Edward S. Dreyer. The notes and trust deeds for $8000 were dated March 8, 1894, and those for $2000 were dated March 9, 1894. The

trust deeds were all executed and acknowledged March 9, 1894, and they were all filed for record March 10, 1894, at ten o'clock A. M. The recorder endorsed upon each a certificate that the same was filed for record on said day at ten o'clock A. M., and the certificates show that they were filed simultaneously. In numbering the trust deeds the recorder gave the one securing the $2000 note the first number, 2,006,732. The trust deed securing the note owned by Glade was given the next number, 2,006,733, and the one securing the note owned by Bartholomae was numbered 2,006,734. On the same day that the trust deeds were filed for record, Glade purchased of E. S. Dreyer & Co. the $8000 note secured by trust deed on one of the lots and paid therefor. The premises were misdescribed in the trust deeds on account of a subdivision that had been made, and the mistake was discovered shortly after the trust deeds were filed, and new trust deeds were made out bearing the same dates as the originals, securing the same notes and in every respect like them, except the insertion of a correct description, and they were filed for record March 29, 1894, at two o'clock P. M., the certificate, as before, showing the same time of filing. At that time the new trust deed securing the Glade note received the first number, 2,016,107, the trust deed securing the other $8000 note was given the next number, 2,016,108, and the trust deed securing the $2000 note on both lots was numbered 2,016,109. Dreyer, the trustee, afterward attempted to release the first trust deeds by a deed of release acknowledged July 23 and recorded September 4, 1894. On April 4, 1894, Philip Bartholomae, of whom the appellee Henry Bartholomae is executor, purchased the remaining $8000 note secured by trust deed on one lot, and Schaeppi purchased the $2000 note secured by trust deed on both lots. There is no means of determining whether Bartholomae or Schaeppi bought first. Each one paid for the note purchased by him. Up to that time Bode and Seymour, the mortga-

gors, had received nothing, and no money had been advanced or paid by E. S. Dreyer & Co. on account of the trust deeds. On June 1, 1894, E. S. Dreyer & Co. charged Bode and Seymour on their books with a check of $8000 and one dollar for recording. On June 2, 1894, a credit to Bode and Seymour of $18,000 was entered on the same account as loans. Subsequently, the money borrowed was drawn out, from time to time, as the building progressed. On September 21, 1894, there remained in the hands of E. S. Dreyer & Co. $39 of the $16,000 represented by the two principal loans, and this, with the $2000, was paid over. The two trust deeds securing notes for $8000 being on separate lots, there is no controversy between their owners, Glade and Bartholomae, as to priority, but the controversy is between them and Schaeppi. The superior court found that the trust deed securing Schaeppi's note for $2000 was a second lien upon the lots, giving the trust deeds securing the $8000 priority over it. A decree for foreclosure was entered in accordance with the finding, and solicitors' fees were allowed to Glade and Bartholomae for foreclosing their trust deeds, as provided therein. The Appellate Court affirmed the decree.

In our judgment the decree was right. By the original agreement the notes for $8000 each, and the trust deeds securing them, were the first liens. The note and trust deed for $2000 were dated one day later, and were provisional, only. Nothing was to be paid or advanced upon them unless required for interest, depending upon the length of time required to complete the building before it would yield any revenue. If, in the end, no money was advanced, the note was to be surrendered and no interest charged and the trust deed was to be released. The $16,000 was to be advanced at all events, but the $2000 was not to be used unless called for. By April 4, 1894, the notes had all been sold by E. S. Dreyer & Co., but it was not until June that any money was paid to

195—5

Bode and Seymour, or even credited to them on the books
of E. S. Dreyer & Co. A mortgage without any debt has
no effect as a lien, and it can only take effect from the
time when some debt or liability secured by it is created.
A debt or mortgage obligation is essential to create a
lien. (*Schultze* v. *Houfes*, 96 Ill. 335; *Fischer* v. *Tuohy*, 186
id. 143.) There was no lien which any one could have
enforced in any form, by virtue of the trust deeds, until
money was advanced, or at least credited on the bank
books in such a way as to create a debt or obligation on
the part of Bode and Seymour. It is beyond question
that the intention of all the parties and the original
agreement was the $2000 was not to be advanced un-
less it was found to be necessary before the building was
finally completed, and it was never called for or ad-
vanced until September 21, 1894.

It is urged, however, that the evidence of the agree-
ment between E. S. Dreyer & Co. and the mortgagors,
and of the time when the money was advanced to Bode
and Seymour, was inadmissible, as tending to vary and
contradict the terms of the trust deeds. The contest was
in a court of equity, not concerning liability upon the
notes according to their terms, but touching the liens
created and the equities of the parties in their enforce-
ment. The evidence did not change, add to or subtract
from the agreements contained in the instruments, but
was offered to show when the liens took effect and their
relation to each other. In any case, if there was an at-
tempt to enforce a lien, Bode and Seymour could have
proved that there was no debt by showing that the con-
sideration of the notes was never received. The delivery
of the notes or trust deeds could have been proved or
disputed by extrinsic evidence. Bode and Seymour, or
the holders of the other trust deeds, could have proved
payment of Schaeppi's note or that Bode and Seymour
never got any money from E. S. Dreyer & Co. upon it,
and it seems equally proper to show when the money

was in fact received and when the trust deed became a lien by the payment of the money.

It is contended, however, by Schaeppi, that he has a better right than E. S. Dreyer & Co. would have had, and that he is entitled to priority under the provision of the statute that an instrument shall be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers without notice. The argument is based on the ground that his trust deed received the first number when they were filed for record. If he had desired to rely upon the first trust deed and his claim of priority by virtue of its having been numbered first, he should have rested his rights upon that trust deed and asked to have it reformed and foreclosed. The transfer of the note to him carried with it all the security of the trust deeds, and he did not rely upon the first trust deed alone, but set out also the second trust deed, which received the last number when the second set were recorded March 29, 1894. Treating the question, however, as an open one, we do not think that he has priority by reason of the numbers. The statute provides that the certificate of the recorder of the time of filing, endorsed upon the instrument, shall be considered the time of recording the same and shall be evidence of the facts therein stated. The certificates on these instruments show that they were filed simultaneously, and the effect of such a filing is that neither can claim any advantage of prior recording. (*Noakes* v. *Martin*, 15 Ill. 118; *Deininger* v. *McConnel*, 41 id. 227; *Stafford* v. *Rensselaer*, 9 Cow. 315.) The statute also requires the recorder to keep a book in which instruments are to be entered in the order in which they are filed, and to endorse upon the instrument a number corresponding with the number of the entry. The certificate on the instrument is expressly made evidence of the facts stated in it, and in this case the numbers on the instruments are not inconsistent with the certificate that they were filed at the same time. The

fact that they did not receive the same number would not tend to show that they were not filed at the same time, since they could not receive the same number. If instruments are received by mail in the same envelope, or delivered in the same parcel, or handed to the recorder together, the numbers must necessarily be different. It is proper, and sometimes desirable, to file different instruments at the same time, and it could not be the intent of the statute that they could not be filed simultaneously and that there must be a priority to be determined by the numbers. It cannot be that a recorder can have any power to affect the rights of parties by numbering the instruments, or that priorities should be fixed by the mere chance of numbering instruments received at the same instant of time. There is no evidence contradicting, in any manner, the certificate of the recorder that the trust deeds on each occasion were filed at precisely the same time.

Counsel say that this court passed directly on the question in *Brookfield* v. *Goodrich*, 32 Ill. 363, and held that the presumption was that trust deeds were filed for record in the order in which they were handed to the recorder; that they were entitled to priority accordingly. The statute then required the recorder to make an entry of every deed brought into his office, dating the entry on the day the deed was brought in, and to record the same in regular succession, according to the priority of time of their being brought into the office. No time was required to be noted except the day. Two trust deeds were recorded on the same day, and J. F. Wait, a clerk in the recorder's office, testified that he did not make a memorandum of the hour of the day when a deed was left for record, unless requested to do so. He testified that the practice of the office was, if a person handed him two deeds successively, he would enter and record first the one handed him first, and if two were handed him together he would ask which the party wished recorded

first. His testimony was, that one of the trust deeds in question was filed before the other, and that the numbers on the deeds showed the order in which they were filed. It was a fair conclusion that the deed given the preference was handed to the recorder first, while in this case the certificate, which is made evidence by the statute, shows that the trust deeds were all delivered at the same time. Schaeppi proved no equities superior to Glade or Bartholomae. Glade paid his money on March 10, 1894, and there is no evidence tending to prove that Schaeppi paid first on April 4, 1894, when he and Bartholomae bought the other notes. We are satisfied with the conclusion of the superior court.

Objection is made to the allowance of solicitor's fees to Glade and Bartholomae for foreclosing their trust deeds, on the ground that they might have had all the relief given them under their answers. The suit was begun by Schaeppi, and the holders of the other deeds were made defendants to his bill under an allegation that their interests were subject to his lien and accrued afterward. They answered, setting forth their claims and rights, but if they had been successful in establishing the priority of their trust deeds there would have been no foreclosure of them. The decree would have ordered a sale to satisfy the amount due Schaeppi, subject to their prior liens. It was at their election whether they should foreclose their trust deeds or not, and they chose to file cross-bills and seek foreclosure. The relief granted to them could not have been obtained upon answer or motion, and the allowances for solicitors' fees were proper. *Shaffner* v. *Appleman*, 170 Ill. 281; *Town* v. *Alexander*, 185 id. 254.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*