Anna L. Bauer, Appellee, v. Philip C. Lindgren et al., Defendants. Philip C. Lindgren and Heitman Trust Company, Appellants.

Gen. No. 37,972.

Opinion filed March 29, 1935.

Hershenson & Hershenson, of Chicago, for appellants.

Shulman, Shulman & Abrams and Salinger & Alexander, all of Chicago, for appellee; Meyer Abrams, of counsel.

Mr. Justice Scanlan delivered the opinion of the court.

Complainant, on November 1, 1934, filed her verified bill against Philip C. Lindgren, Heitman Trust Company, a corporation, et al., which prayed for the following relief: The removal of Heitman Trust Company, as trustee under a trust deed securing a principal indebtedness of $125,000; for the appointment of a successor trustee; for the appointment of a receiver during the pendency of the cause; for an accounting; that all funds received and wrongfully disbursed be returned; that the title acquired by defendant Lindgren be adjudicated as belonging to all bondholders and that he be declared to hold the title of trustee for them. As soon as the bill was filed, complainant's solicitors notified defendants Lindgren and Heitman Trust Company that on Friday, November 2, 1934, at 10 a.m., they would appear before Judge Lewis and present ''a motion for the appointment of a Receiver for the premises located at 915 Dakin Av. and for such other relief as the court, in its discretion may deem

meet.'' On November 2, 1934, Judge Lewis continued the motion until November 3, 1934, upon the condition that said defendants ''will file no other bill to foreclose nor do any other act until the hearing of this cause on Nov. 3, 1934.'' On November 3 the chancellor entered the following order:

''This cause coming on to be heard on motion of Anna L. Bauer, plaintiff, by Salenger & Alexander, her attorneys, for the appointment of a Receiver for the premises located at 915-917 Daken Avenue, Chicago, Illinois, and the court having before it the sworn bill of complaint and having heard argument of counsel and being fully advised in the premises doth find that it is alleged in the bill of complaint.

''I.

''That Anna L. Bauer is the legal owner and holder of Bond No. 125 secured by a trust deed dated May 2, 1928, on the premises located at 915-917 Dakin Avenue.

''II.

''That on May 5, 1931, Heitman Trust Company, as Trustee, exhibited a sworn bill of complaint alleging therein

''(a) That Philip C. Lindgren and Heitman Trust Company are manipulating the proceeds of the property in such manner as to deprive the owner of the bonds outstanding from gaining the proceeds from the estate, as alleged in bill of complaint.

''(b) That Heitman Trust Company is wholly incompetent to proceed as trustee of the above entitled cause and that it would be for the benefit of all bondholders as well as for all persons interested in the said property to immediately remove Heitman Trust Company, as Trustee, and appoint a receiver to manage, control and operate the premises hereinabove referred to.

"Now Therefore, It Is Hereby Ordered that Oscar Weiner be and is hereby appointed Receiver of and for the premises located at 915-917 Dakin Avenue, Chicago, Illinois, and collect the rents issues and profits therefrom during the pendency of this suit, and use all such rents, issues and. profits to pay all receivership expenses and for repairs, insurance taxes and assessments upon the said premises due, or which may accrue during such receivership, and that the remainder of said rents, issues and profits of said property shall be applied toward the payment of interest on the bonds secured by the trust deed herein sought to be foreclosed, and that the Heitman Trust Company attorn to the receiver herein.

"It Is Further Ordered that all moneys now on hand with the Heitman Trust Company or with Philip C. Lindgren be immediately turned over to the receiver.

"It Is Further Ordered that Heitman Trust Company be restrained from proceeding in any court with any foreclosure proceedings until the further order of this court.

"It Is Further Ordered that the receiver file his bond in the sum of $5,000.00 with good and sufficient surety, and that the complainant file her bond in the sum of $500.00 to the entry of which order the defendant Philip C. Lindgren and Heitman Trust Company duly object and except.

"ENTER   Harry A. Lewis
Judge."

From that order this interlocutory appeal is prosecuted by defendants Lindgren and Heitman Trust Company.

In so far as it is material to this appeal, the bill alleges the execution of 160 bonds and a trust deed, on May 2, 1928, by Harry Yavitch and his wife; that the sum of the principal indebtedness was $125,000; that

complainant was the holder of one bond; that Article 9 of the trust deed provides for partial foreclosure by the holder of a single bond subject to the continuing and prior lien of the remaining bonds; that complainant has so subordinated her bond; that on May 5, 1931, Heitman Trust Company, the trustee in said bond issue, filed a bill, as trustee, against Harry Yavitch et al. for the partial foreclosure of bonds numbered 19 to 24, aggregating $3,000, at the demand of defendant Lindgren, the alleged owner thereof; that thereafter an order was entered that the bill be dismissed, the receiver discharged, and the premises turned over to Heitman Trust Company, as trustee in possession; that no notice of such proceedings was given to complainant; that Heitman Trust Company, not Lindgren, was the real legal holder and owner of the bonds; that thereafter Lindgren acquired the title to the premises and complainant "verily believes" that the funds to acquire the title were acquired from the income from the premises which the said trustee received while in possession; that on March 13, 1934, Heitman Trust Company wrote to complainant and other bondholders, suggesting a reduction of the interest to three per cent and requesting the bondholders to consent thereto; that the bondholders were led to believe from said letter that the Heitman Trust Company was attempting to obtain an extension for a bona fide holder, but that in reality it was attempting to obtain an extension for its own interest; that defaults were made in the payment of taxes but the bondholders were not informed thereof. The bill further alleges:

## "XVII.

"That plaintiff is also informed and verily believes the information to be true and so charges the facts to be that the Heitman Trust Company is managing the property and making repairs, but has secret views to

receive a rake-off on such repairs, supplies and material in amounts unknown to plaintiff, and so it would appear upon the trial of this cause and that it is contrary to the conscience of the Court of Equity that permit such a trustee whose interest is in conflict with the interest of the bond holders and who has violated its true duty and obligations to manage and operate the premises and to use the income for its own purposes and that a receiver should immediately be appointed to collect the rents, issues and profits and to manage and operate the premises under the control of the court, and that the Heitman Trust Company should be required to attorn to such Receiver and to turn over all funds in its possession and file a true and accurate account of all moneys received and moneys disbursed.

## "XVIII.

"Plaintiff further says that she was informed and verily believes the information to be true that it is the intent of the Heitman Trust Company and said Philip C. Lindgren to hold the property for their own use and benefit and to purchase the existing bonds at nominal prices so that they would acquire the property free and clear from the lien of the bond holders and due to the fact that under the terms and provisions of the trust deed, the exclusive right of action is in the said Heitman Trust Company, and no bond holder has the right to maintain any action unless a demand be made by the requisite number upon said Heitman Trust Company to foreclose; the said trust company has placed itself in a masterful position by which it can control the management of the property, the operation thereof and if any bond holder would desire to protect his rights, he must subordinate his bonds to that of the other bond owners; . . ."

In the hearing of the motion on November 3 the counsel (Mr. Salinger) who appeared for the com-

plainant informed the chancellor that the trustee had been in possession and control of the building since 1931. Counsel for defendants then called the attention of the chancellor to the fact that the bill was not one for the foreclosure of the trust deed but for the removal of the trustee and the appointment of a receiver, and that the bill "was on information and belief," whereupon the chancellor stated, "I must assume that the allegations are true." Counsel for defendants stated that Heitman Trust Company "is in possession of this building as trustee, for the benefit of the bond-holders," and argued that the chancellor would not be justified in granting the motion under the allegations of the bill, but that, in any event, the chancellor should not pass on the motion until he took evidence or referred the matter to a master to take evidence; that defendant Heitman Trust Company was a trust company authorized to do a trust business under the laws of this State and that it had $200,000 upon deposit with the State auditor but that it would put up a bond in any amount that the court might fix "in lieu of the appointment of a receiver." The chancellor then stated that he wanted to find out what was the matter with the building and that he was going to appoint a receiver to investigate the Trust Company, and that if the receiver found that the trustee was not acting dishonestly he would remove the receiver and restore the trustee to possession. Defendants' counsel called the attention of the chancellor to the fact that he was acting upon the bill only, whereupon the chancellor stated "and on the statement of counsel." Complainant was then called to the stand to testify in her own behalf. It appears from her testimony that she had no personal knowledge as to any material facts bearing upon the charge that the trustee was guilty of dishonesty or misconduct in the performance of its duties, that her information as to "rake offs and secret deals" came to

her from her lawyer, that he told her "that the Heitman Trust Company used the rents out of this building to purchase the title," that she did not know of any bonds that the defendants purchased. The following then occurred: "Mr. Hershenson (solicitor for appellants): This is a suit to remove the trustee and appoint a receiver. Mr. Salenger (solicitor for complainant): *And we allege it on information and belief.* Mr. Hershenson: That is the whole thing. The whole bill is, in fact, on information and belief. Mr. Salenger: *We show our information and show our belief and you dare not let it go through.* Mr. Hershenson: Why don't you let the matter go to a complete hearing? The Court: I will appoint a receiver and if, · after three or four months we find that that is unnecessary, we will dismiss him. Mr. Hershenson: Why not let this matter go to a master? We can take testimony starting Monday morning, and finish it within a day or so. The Court: No, I don't care to have this matter go to a Master. I haven't confidence in them, as influence can be brought to bear upon them. Mr. Hershenson: If the Court please, you may refer it to your own Master, if you haven't any confidence in the other Masters of this Court. The Court: I will not refer it to a Master. Whom do you want as receiver? Mr. Salenger: Oscar Weiner. Mr. Hershenson: Now, if the Court please, I want to offer some evidence here. The Court: I don't care to hear any evidence from you. Mr. Hershenson: Well, will you permit me to make an offer of proof? The Court: No. Mr. Hershenson: I am objecting to the appointment of a receiver here. I think it is absolutely unfair for the Court to appoint a receiver based on the evidence that has been heard. The Court: I am sorry. I am going to appoint a receiver. Mr. Hershenson: Your honor, you are not going to appoint a receiver when there is a dispute as to the ownership of her bonds? Mr. Salen-

ger: If we seek to remove the trustee on her say so, we have a right to a receiver anyway. Mr. Hershenson: If the Court please, this is a sworn bill based on information and belief. The Court: It may be. I just want to be fair. Mr. Hershenson: The evidence offered in this case has been all put in by the plaintiff. Mr. Salenger: You called them as your witnesses. The Court: *I don't need any evidence on the bill.* Mr. Salenger: What is the bond, if the Court please? The Court: The income is $800.00 a month. Mr. Hershenson: The receiver's bond ought to be $10,000.00. Mr. Salenger: We will give more than that if the receiver's leases will warrant a larger bond. The Court: The receiver can do much. Mr. Salenger: We will get that old lease set aside. What is the bond? The Court: The income is $800.00 a month. I suppose $5,000.00 for the receiver and $500.00 for the plaintiff's bond. Mr. Hershenson: I think it ought to be double that, if the Court please. Counsel has made a statement that they were willing to put up any amount of bond. We want a substantial amount for the plaintiff's bond. The Court: You have a $5,000.00 bond. Mr. Hershenson: We ought to have a bond for $10,000. The Court: If we find out that this action is not necessary, we will turn the building right back to you. Mr. Hershenson: May I ask whom your Honor is going to appoint as receiver? I ask if a receiver is going to be appointed, that you appoint a bank or a trust company. Mr. Salenger: No, no trust company. Mr. Hershenson: The Chicago Title and Trust Company, the Continental Bank, or any bank or trust company. Mr. Salenger: No bank and no trust company. There are no more trust companies. The Court: I will appoint Oscar Weiner as receiver. That is all. Mr. Hershenson: May I see a copy of the order? I don't know how the Court got this order. I think I should have seen the order before it was entered. Miss Reporter, will

you just let the record show that the order has been entered without my having seen a copy of it? The Court: I will give it back so you can read it. Mr. Salenger: It is just an ordinary appointment for a receiver, Judge; there is nothing in there out of the ordinary. (Handing document to counsel.) Mr. Hershenson: If the Court please, there are a lot of findings in here. Just let me read you one paragraph here. 'That the Heitman Trust Company is wholly incompetent to proceed as Trustee of the above entitled cause, and that it would be for the benefit of all the bondholders, as well as for all persons interested in said property, to immediately remove the Heitman Trust Company as trustee, and appoint a receiver to manage and control and operate the premises herein above referred to.' You are prejudging this case. The Court: I will insert: 'as alleged in the bill of complaint.' ''

Complainant attempts to justify the order of November 3 by a reference to pleadings subsequently entered in the cause. This interlocutory appeal is from the order of November 3 and we must determine the appeal by the record as it was on that date.

The order is based solely upon the allegations of the bill, and the chancellor assumed, apparently, that the allegations were sufficient to support the following finding in the order:

*"That on May 5, 1931, Heitman Trust Company, as Trustee, exhibited a sworn bill of complaint alleging therein*

*"(a) That Philip C. Lindgren and Heitman Trust Company are manipulating the proceeds of the property in such manner as to deprive the owner of the bonds outstanding from gaining the proceeds from the estate, as alleged in the bill of complaint."*

It was solely upon that finding that the chancellor made the following finding:

"(b)   That Heitman Trust Company is wholly incompetent to proceed as trustee of the above entitled cause and that it would be for the benefit of all bondholders as well as for all persons interested in the said property to immediately remove Heitman Trust Company, as trustee, and appoint a Receiver to manage, control and operate the premises hereinabove referred to."

We find no allegation in the bill that would support finding (a). Yet upon such an unwarranted and absurd finding the chancellor predicated the further finding (b), and the important and far-reaching orders that follow are based upon findings (a) and (b). Complainant asks us to consider the allegation "that on May 5, 1931, Heitman Trust Company, as Trustee, exhibited a sworn bill of complaint alleging therein," as "a mere clerical error made by the draftsman of the decree," and to disregard it and to read into the order, in lieu thereof, the following words, "that complainant's sworn bill alleges therein." We, of course, cannot follow this request. Nor do we find anything in the proceedings to warrant the assumption that the words that complainant now asks us to disregard were written in the order by "mere clerical error." Complainant drew the order and it appears from the proceedings of November 3 that the solicitor for defendants did not see it until it had been entered. But even if we followed the suggestion of counsel, the allegations of the bill, as we have heretofore stated, would not warrant finding (a) nor (b). On November 3 the trustee under the trust deed was in possession and control of the premises for the benefit of the bondholders. The bill was brought by an alleged holder of one bond, who, in her bill, expressly subordinates it to the balance of the bonds secured by the trust deed. Neither the bill nor the evidence of complainant warranted a finding of misconduct on the part of the

trustee and the chancellor had no right to disturb the possession of the trustee. (See *Altschuler v. Sandelman,* 264 Ill. App. 106; *Consumers Bond & Mtg. Co. v. Sadin,* 266 Ill. App. 141; *Wolkenstein v. Slonim,* 355 Ill. 306; *American Trust & Safe Deposit Co. v. Eldred,* 267 Ill. App. 176.) The position of complainant, a holder of a subordinated bond, is parallel to that of a second mortgagee and her legal status is the same. (*Lavelle v. Steiner,* 270 Ill. App. 131.) The chancellor refused to allow the trustee to offer any evidence touching the alleged misconduct and he was of the opinion that regardless of the fact that the material allegations in the bill as to the conduct of the trustee were made upon information and belief, he had the right to appoint a receiver to investigate the trustee upon the understanding that if after three months it was found that the trustee was not unfaithful to its trust the chancellor could dismiss the receiver and restore the possession of the premises to the trustee. The fact that the chancellor did not in express terms remove the trustee by the order is of no importance in determining the merits of this appeal, as the order, in effect, amounted to a removal of the trustee. It found Heitman Trust Company was wholly incompetent to act as trustee, and that it would be for the benefit of all bondholders as well as for all persons interested in the property "to immediately remove" the trustee; it took away from it the possession and control of the real estate and all the trust funds and enjoined it from taking steps to protect the rights of the bondholders. All that was left the trustee was the naked title.

The order went beyond the prayer of the bill, indeed, beyond anything asked by the solicitors for complainant in the notice or during the hearing. The order contains the following:

"It is further ordered that Heitman Trust Company be restrained from proceeding in any court with any foreclosure proceedings until the further order of this court."

The instant bill does not ask for a foreclosure, yet by the aforesaid part of the order the trustee was prevented from taking any steps to protect the interests of the bondholders by foreclosing the trust deed. The bill does not ask for any injunction, nor does it allege any facts that would warrant the issuance of one, nor does it allege that any damages would accrue to the complainant if an injunction is not granted. We are aware that the new Civil Practice Act, Cahill's Ill. Rev. St. 1933, ch. 110, ¶ 162, states that the prayer for relief "shall not be deemed to limit the relief obtainable," but that paragraph also contains the following: "but where other relief is sought the court shall, by proper orders, and upon such terms as may be just, protect the adverse party against prejudice by reason of surprise." Neither the allegations nor the prayer of the bill, nor the notice served on defendants, gave any notice that an injunction would be asked for, and from the record of the proceedings of November 3 we find that the solicitor for complainant made no request of the chancellor save for the appointment of a receiver. No bond was required by the order, as provided for in par. 9, ch. 69, Cahill's Ill. Rev. St. 1933, nor is there any finding that for good cause shown the injunction was granted without bond.

The provisions of the order "that all moneys now on hand with the Heitman Trust Company or with Philip C. Lindgren be immediately turned over to the receiver," and that the "rents, issues and profits of said property shall be applied toward the payment of interest on the bonds," are obviously erroneous and unwarranted.

410

We are constrained to hold that the contention of defendants that the action of the chancellor in entering the order in question constituted a grave abuse of power is fully warranted by the record. Such orders produce an intolerable situation and tend to bring the courts of chancery into disrepute.

The interlocutory order of the superior court of Cook county of November 3, 1934, is reversed.

*Interlocutory order of November 3, 1934, reversed.*
FRIEND, P. J., and SULLIVAN, J., concur.