Howard P. Jennings, Appellee, v. Joe Krupka et al., Appellees. John Hancock Mutual Life Insurance Company, Appellant.

John Hancock Mutual Life Insurance Company, Appellant, v. Howard P. Jennings et al., Appellees.

Gen. No. 38,031.

Heard in the first division of this court for the first district at the February term, 1935.

Opinion filed May 6, 1935.

McKINNEY, LYNDE & GREAR, of Chicago, for appellant; GEORGE H. GREAR, of counsel.

C. B. HAFFENBERG, of Chicago, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal the defendant and cross complainant John Hancock Mutual Life Insurance Company, a corporation, seeks to reverse in part a decree entered in a foreclosure suit.

The record discloses that Joe Krupka and Minnie Krupka, his wife, on the first of July, 1929, executed their trust deed to the Chicago Title and Trust Company to secure an indebtedness of $30,000 which was evidenced by notes from "A" to "K," both inclusive. The first of these notes was due July 22, 1931, and a number of the notes, including note "K," which was for $5,000, were due and payable July 22, 1934. The notes and trust deed were all owned by the Reliance Bank & Trust Company, and afterward, on September 13, 1929, the Reliance Bank executed a subordination agreement which subordinated note "K" for $5,000 to the payment of the other notes. That agreement recited that the Reliance Bank owned all the notes and trust deed; that the bank was desirous of selling notes "A" to "J" both inclusive, aggregating $25,000, to the John Hancock Mutual Life Insurance Company; that the insurance company was willing to purchase such notes, but only upon condition that the notes so purchased would be given "complete priority over said note numbered 'K' "; that to induce the insurance company to purchase the notes, and in consideration thereof, the Reliance Bank subordinated the lien of the trust deed "insofar as it secures the payment of said note numbered 'K,' said note remaining in the hands of the undersigned, to the lien of said trust deed insofar as it secures the payment of said notes numbered 'A' to 'J,' " being the notes to be sold to the insurance company. The bank further agreed that in case foreclosure was brought to enforce the payment of any of the notes sold to the insurance company, such notes should "first be paid in full, together

with any and all costs and charges accruing or to accrue under the provisions of said Trust Deed before the holder of the remaining note receives any amount on account of said notes, and further agrees to forthwith endorse on said subordinated note as notice of this agreement to future purchasers or holders thereof substantially the following legend: 'For valuable consideration, the lien of this note stamped with this legend both as to principal and interest is hereby subordinated and made junior to the lien of notes numbered "A" to "J" inc., issued and outstanding . . . and not stamped with this legend, as enumerated in a certain subordination agreement [between the bank and the Insurance company] and that said subordinated note shall bear such legend at the time of its delivery out of the possession of the undersigned.' " (The Reliance Bank.)

On the same day the legend, in conformity to the agreement above mentioned, was stamped or written on note "K" and across the face of that note the following words were printed in bold letters: "This Is a Subordinated Note." Afterward this note was sold to Howard P. Jennings, the complainant, and the mortgagors being in default, Jennings on November 29, 1933, filed his bill to foreclose the trust deed.

It is alleged in the bill that complainant owns note "K" for $5,000, and that the payment of it has been subordinated to the payment of other notes held by the life insurance company, and that complainant brings his suit on behalf of himself and of the insurance company; that there is no conflict in their respective interests. The prayer was the usual one and contained the further prayer, "that defendants, or some of them, be decreed to pay complainant for the use and benefit of the holders" of the notes and coupons, the amount found to be due.

Afterward the insurance company, by leave of court, filed its cross-bill in which it sought to foreclose the trust deed for the default in payment of the notes "C" to "J," then owned by it, notes "A" and "B" having theretofore been paid. The cross-bill set up that the insurance company had paid nearly $2,800 on account of general taxes on the property for the years 1928, 1929, 1930 and 1931, and under the terms of the trust deed it sought to obtain a lien for this amount and for solicitors' fees incurred in the foreclosure suit.

Complainant Jennings, on the hearing before the master, offered evidence to the effect that his solicitors had performed services for which the usual and customary charges were $1,650. Solicitors for the insurance company objected to any allowance for his solicitors' fees "except as subject and subordinate to the amount found due cross-complainant, together with costs, expenses and attorney's fees." The insurance company also offered evidence to the effect that the fair value of the services rendered by its solicitors was $1,350. Counsel for complainant objected to the allowance of any fees on account of services performed by the insurance company's solicitors.

The master, in his report, recommended that $1,350 be allowed complainant Jennings for his solicitors' fees which should be paid before the amount of the taxes paid by the cross complainant, which together with interest then due amounted to more than $3,200, and before any payment be made to the insurance company for the amount due on the notes, which was nearly $28,000. He further recommended that after these payments were made to the complainant and the cross complainant, then Jennings should be paid the amount due on his note, amounting to nearly $6,000. The master further found that no allowance should be made for the services performed by the insurance company's solicitors because the insurance company

could have obtained all the relief it was entitled to by filing an answer.

Objections to the report were overruled; the chancellor sustained the master except that he reduced the complainant's solicitors' fees to $675.

The defendant and cross complainant, the insurance company, contends that it should have been allowed its solicitors' fees and that it should be paid in full for its expenses, taxes, amount due on the notes, and its solicitors' fees before any allowance should be made to the complainant for solicitors' fees. We think this contention must be sustained. The effect of the subordination agreement above referred to was to make the lien of note "K" for $5,000, owned by complainant Jennings, a second lien on the premises. *Walker v. Dement,* 42 Ill. 272; *Central Trust Co. v. Calumet Co.,* 260 Ill. App. 410; *Lavelle v. Steiner,* 270 Ill. App. 131; *Bauer v. Lindgren,* 279 Ill. App. 397.

The substance of the subordination agreement having been stamped or written on note "K" before Jennings purchased it, was notice to him that the lien of his note was subsequent to that of the notes owned by the insurance company.

We think it was necessary for the insurance company to file its cross-bill to protect its rights. It had paid taxes on the property amounting to about $2,800. It having, in effect, a first mortgage on the property, the only way to be assured that its rights would be fully protected was to file a cross-bill, and therefore it was entitled to have its solicitors' fees paid. *Shaffner v. Appleman,* 170 Ill. 281; *Schaeppi v. Glade,* 195 Ill. 62. Moreover, the bill of complaint prayed that the defendants, or some of them, which included the insurance company, be decreed to pay to the complainant, Jennings, "for the use and benefit of the holders of said matured notes and coupons," the amount found to be due upon an accounting.

Complainant Jennings contends that the relief sought by the cross-bill was obtainable by answer; that the cross-bill was therefore unnecessary, and no solicitors' fees could properly be allowed to the insurance company. In support of this counsel cite *Rock Island Nat. Bank v. Thompson,* 173 Ill. 593; *Gardner v. Cohn,* 191 Ill. 553; *Good v. Woodruff,* 208 Ill. App. 147. We think none of these cases is in point.

In the *Thompson* case (173 Ill. 593), Thompson and Root in 1888 obtained a judgment against the Keator Lumber Co., which was affirmed by the United States Supreme Court in April, 1892. Two days afterward the Keator Lumber Co. gave a mortgage on real estate which it owned continuously from the day the judgment was entered against it in 1888. Sixteen days after the mortgage was recorded a bill was filed to foreclose the mortgage. Thompson and Root were made defendants; they answered claiming their judgment was a first lien. A decree of foreclosure was entered but it was found that the lien of the judgment was prior to that of the mortgage. On appeal to the Appellate and Supreme Courts the decree was affirmed. The court held that since the foreclosure bill prayed that the property be sold and the proceeds distributed "according to law," the court might order that the claim of defendants (judgment creditors) be paid as a prior lien without the filing of a cross-bill. So far as we are advised, that case has never been cited on the point now under consideration except in one case, which was a mechanic's lien case, 136 Ill. App. 453. But it has always been held, so far as we are advised, that where a bill is filed to foreclose a second mortgage, the holder of the first mortgages is not required to take notice of the case because his rights cannot be adversely affected. *Schaeppi v. Glade,* 195 Ill. 62.

To distinguish the *Gardner* case, counsel for the insurance company in their reply brief say: "the court

followed the rule announced in the *Sanborn* case, *supra.*" The *Sanborn* case appears five pages before this statement. The reference to the case by the word "*supra*" is contrary to Rule 7 of this court. That rule provides that "Cases wherever cited must be by title and number and page of the volume of the official report."

In the *Gardner* case, 191 Ill. 553, a bill was filed to foreclose a mortgage. One of the defendants answered and filed a cross-bill claiming a prior lien on the premises. The court held against this defendant, dismissed the cross-bill, and it was held that the cross-bill was unnecessary.

In the *Good* case, 208 Ill. App. 147, a bill was filed to foreclose a first mortgage. Another party claiming to own a second mortgage, which under the facts should be held to be a first lien, contested the case; but nothing was said in that case as to whether the defendant had filed an answer or a cross-bill.

For the reasons stated we think a cross-bill was necessary to protect all of the insurance company's rights. The indebtedness due the complainant, Jennings, was a second lien on the premises and under the express terms of the subordination agreement the insurance company, the owner of all of the notes except note "K," were to "first be paid in full, together with any and all costs and charges accruing . . . before the holder of the remaining note receives any amount on account of said notes." The trust deed did provide for the payment of solicitors' fees and we think the insurance company should be made whole in this respect before Jennings was entitled to receive any of the proceeds that might be derived from the sale of the premises.

For the reasons stated the decree of the circuit court of Cook county is affirmed in all respects except as to the provision for solicitors' fees; as to these parts the

decree is reversed and the cause remanded with directions to modify the decree in conformity with the views hereinabove expressed.

*Decree affirmed in part, reversed in part and remanded with directions.*

McSURELY and MATCHETT, JJ., concur.